STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
FRED MINGO, DEFENDANT-APPELLANT.

Argued January 10, 1978—Decided July 26, 1978.

On certification to the Superior Court, Appellate Division, whose opinion is reported at 143 *N. J. Super.* 411 (1976).

*Mr. Ezra D. Rosenberg,* Assistant Deputy Public Defender, argued the cause for appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. Solomon Rosengarten,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by
PASHMAN, J. Defendant Fred Mingo appeals from his convictions for rape and attempted robbery. Before she was attacked, the victim of the crimes with which Mingo was charged had been lost in an unfamiliar section of Paterson. In response to her request for assistance, the eventual assailant provided the victim with handwritten directions to her destination on a small piece of note paper. While in police custody, Mingo, at the instruction of the police, furnished handwriting exemplars in the exact words which had been written by the rapist. Several of the exemplars were rendered on small pieces of paper from a note pad. Prior to trial, Mingo's attorney sought to compel the State's production of the note allegedly written by the assailant for the purpose of having it examined and analyzed by a handwriting expert retained by the defense attorney to aid in the preparation of a defense. Over objection, the judge conditioned his grant of this request on defense counsel's agreeing to furnish the prosecutor with a copy of any reports concerning the handwriting on the note rendered by the expert irrespective of whether the defense intended to use the expert as a witness at trial. Defense counsel provided the

expert with three letters written by the defendant as samples of his handwriting for purposes of comparison with the handwriting on the document furnished by the State. The expert concluded that the same person had written each and gave a report to that effect to defense counsel. The defense attorney accordingly determined that he would not use the expert as a witness at trial, since the expert's conclusion effectively precluded any attack based on the identity of that document's author. Pursuant to the discovery order, the prosecution obtained a copy of the expert's report and, in view of its contents, subsequently subpoenaed the expert to testify on behalf of the State at defendant's forthcoming trial.

Over defense counsel's strenuous objection that testimony by the expert would violate the attorney-client privilege, he was allowed to testify in the State's case-in-chief.[1] He described the methods and results of his analysis of the handwriting samples furnished by the defendant and the handwriting on the note identified by the victim as having been written by her assailant.[2] Questioning by the defense attorney brought out the fact that the expert had originally been retained to conduct the handwriting analysis by the defense and that he had received the samples of the defendant's handwriting from the defense attorney. However, the defense did not attempt to challenge the accuracy of the expert's ultimate conclusion. It even went so far as to have

[1]The expert himself voiced no objection to testifying as part of the State's case against defendant. However, in an affidavit submitted to the Appellate Division, the expert indicated that he felt the subpoena compelled his testimony and that in its absence he would not have testified for the State.

[2]This document was received in evidence over defense objection that its authentication was insufficient and that no adequate chain of custody had been established. Defendant has not challenged this ruling on appeal. The three samples of the defendant's handwriting with which the defense attorney had supplied the expert for his analysis were never admitted as evidence.

the expert make an in-court analysis of another handwriting sample, provided then and there by the defendant writing the same words which appeared on the note, which reached the same conclusion as to common authorship.

This seemingly counterproductive course of action served as a prelude to the later testimony of the defendant himself. On cross-examination, Mingo identified the note furnished by the prosecution and analyzed for purposes of comparison by the handwriting expert as one of the exemplars he had been compelled to provide the police at the time of his arrest. If that testimony were true, the note could not have been the one written by the perpetrator. This theory was also consistent with the conclusion drawn by the handwriting expert, since he would then have only been matching several samples of handwriting, all of which were the defendant's. The subject of the expert's opinion had only been the identity of the author of the note offered by the prosecution, not the time when it was written. The jury apparently did not find Mingo's testimony persuasive, as it found him guilty.

Defendant's conviction was affirmed by the Appellate Division, which in an unanimous opinion rejected each of his several grounds of appeal. 143 *N. J. Super.* 411 (App. Div. 1976). We granted his petition for certification, —— *N. J.* —— (1976).

I

■ At the outset, we note that the State had no justification for calling defendant's handwriting expert as its witness. If it considered the identity of the disputed note's author to be a critical part of its case, the State was fully capable of retaining its own expert. The better practice would have been for it to have done so, and thus avoid jeopardizing any conviction it might obtain.

■ The right to counsel afforded criminal defendants by the Sixth Amendment of the United States Constitution and by Art. I, par. 10 of the New Jersey Constitution comprehends the right to the effective assistance of counsel. To

safeguard the defense attorney's ability to provide the effective assistance guaranteed by these constitutional provisions, it is essential that he be permitted full investigative latitude in developing a meritorious defense on his client's behalf. This latitude will be circumscribed if defense counsel must risk a potentially crippling revelation to the State of information discovered in the course of investigation which he chooses not to use at trial.

The particular application of the foregoing principle involved in the present case is a defense attorney's right to seek out expert evidence in aid of the defense without risking its disclosure to the State if for any reason the expert's opinion turns out to be unfavorable to the defense. The theory involved has been aptly rationalized in *United States v. Alvarez*, 519 *F.* 2d 1036, 1047 (3 Cir. 1975), as follows: "The attorney must be free to make an informed judgment with respect to the best course for the defense without the inhibition of creating a potential government witness."

In the *Alvarez* case the defendant was appealing from a conviction for kidnapping and conspiracy to kidnap. Defendant was authorized by the trial court to retain a physician to conduct a psychiatric examination. After the examination the physician submitted a report to defense counsel stating that defendant knew the nature and quality of his act, knew that what he was doing was wrong and that he did not lack substantial capacity to conform his conduct to the requirements of the law which he was alleged to have violated. This report was ordered turned over to the prosecution. The government then subpoenaed the physician to testify in its case over objection by the defendant based upon the privilege against self-incrimination, the right to effective assistance of counsel and the attorney-client privilege. The appeals court sustained the defendant's position on what seems a combination of the grounds of effective representation of counsel and the attorney-client privilege, citing our decision in *State v. Kociolek*, 23 *N. J.* 400 (1957). The court's opinion emphasized the fact that the preparation of the report of the

physician required communication by the defendant to the examining physician. The court said: "The effective assistance of counsel with respect to the preparation of an insanity defense demands recognition that a defendant be as free to communicate with a psychiatric expert as with the attorney he is assisting." 519 *F.* 2d at 1046. *See Pouncy v. State,* 353 *So.* 2d 640 (Fla. Dist. Ct. App. 1977); *see also City & County of San Francisco v. Superior Court,* 37 *Cal.* 2d 227, 231 *P.* 2d 26 (1951). *People v. Lines,* 13 *Cal.* 3d 500, 119 *Cal. Rptr.* 225, 531 *P.* 2d 793 (1975); *Lindsay v. Lipson,* 367 *Mich.* 1, 116 *N. W.* 2d 60 (1962); *People v. Hilliker,* 29 *Mich. App.* 543, 185 *N. W.* 2d 831 (Ct. App. 1971); *cf. People v. Knippenberg,* 66 *Ill.* 2d 276, 6 *Ill. Dec.* 46, 362 *N. E.* 2d 681 (1977).

We also find our decision in *State v. Kociolek,* 23 *N. J.* 400 (1957), although formulated in terms of the attorney-client privilege, to be highly relevant as a matter of the defendant's right of effective representation by counsel. In *Kociolek,* the defendant had, at an earlier trial in the same matter, engaged a psychiatrist to examine him for the purpose of informing defendant's counsel whether a defense of insanity or some other mental condition might be utilized. The examination took place, and the psychiatrist furnished counsel an "unfavorable report." The prosecutor obtained a copy of the report from the psychiatrist and, at the trial, the State called him as a rebuttal witness. Although the witness purported to limit his testimony to expert opinion, the State elicited the nature and details of the examination and interrogation of the defendant, including incriminating material. On appeal the defense urged that the findings and report of the psychiatrist "were privileged and protected from disclosure to the State" and that the information obtained by him from the defendant was likewise privileged. This Court sustained the position of the defendant and, on this and other grounds, reversed the conviction. The rationale of *Kociolek* is that the psychiatrist was the agent of the attorney and that therefore any communication by the de-

fendant to the psychiatrist in the course of his examination was the equivalent of a communication by the defendant to the attorney himself. Thus the communications were privileged under the attorney-client privilege. *See also State v. Hunt*, 25 *N. J.* 514, 531–32 (1958). We stated that the privilege includes "communications between the attorney and a scientific expert retained to aid in the presentation of the defense * * *." 23 *N. J.* at 413. We further observed that the privilege was "indispensable to the fulfillment of the constitutional security against self-incrimination and the right to make defense with the aid of counsel skilled in the law." *Id.*, at 414.

We think it makes no difference whether the principle calling for vindication in such a situation is to be denominated the effective representation by counsel or the attorney-client privilege. We regard them as related, and basically subserving the right of a criminal defendant to be effectively represented by counsel. *See State v. Melvins*, 155 *N. J. Super.* 316 (App. Div. 1978). We believe that right to be clearly subverted if an expert report obtained for defense purposes by defendant's counsel is to be made discoverable to the State and utilizable by it, directly or indirectly, at trial, unless a defendant signifies his intention to use the expert evidence at trial or in fact does so.

We find the foregoing principles closely related, functionally, to the attorney's work product privilege. The development of the attorney's work product privilege was mainly designed "to afford a measure of protection to the attorney's privacy against pretrial disclosure of his litigation strategies, his mental processes and the like * * *." *State v. Montague*, 55 *N. J.* 387, 401 (1970). The work product privilege has been more specifically codified in *R.* 3:13–3(c) which prohibits "discovery of a party's work product consisting of internal reports, memoranda or documents made by that party or his attorney or agents, in connection with the investigation, prosecution or defense of the matter * * *." We do not consider the report of the handwriting expert in

the present case as coming within the intent of the foregoing delineation of work product, as it constitutes a species of evidence admissible under some circumstances whereas true work product is inherently inadmissible. *See State v. Montague, supra,* 55 *N. J.* at 402 (true work product is nonevidential) ; *Goldberg v. United States,* 425 *U. S.* 94, 96 *S. Ct.* 1338, 47 *L. Ed.* 2d 603 (1976) ; *cf. Jenkins v. Raimner,* 69 *N. J.* 50, 55 (1976) ; *Franklin v. Milner,* 150 *N. J. Super.* 456 (App. Div. 1977). Nevertheless, the principle of the privilege involved is closely analogous to that of vindication of the right of effective representation of counsel. In both situations revelation of the critical material to the prosecution subverts the ability of counsel effectively to maintain his representation of the defendant.

As a precaution, we observe that the principles we formulate in this case are intended to be applicable solely to criminal prosecutions and not to the civil area. Moreover, our holding here is confined to reports of opinions of expert witnesses and is not intended in any way to bear upon the question of discovery or utilization at trial of information of any other nature assembled by the defense. As to that subject, *see State v. Montague, supra; United States v. Nobles,* 422 *U. S.* 225, 95 *S. Ct.* 2160, 45 *L. Ed.* 2d 141 (1975) ; *cf. Goldberg v. United States, supra.*

As indicated above, the immunity from discovery by the State of defense experts reports is subject to waiver in the event the defense intends to use the substance of those reports at the trial. This qualification has been widely recognized. *See United States v. Nobles, supra; United States v. Alvarez, supra,* 519 *F.* 2d at 1046 ; *State v. Melvins, supra,* 155 *N. J. Super.* at 320–321. In the event the defense obtains the report of an expert and intends to introduce the report into evidenc or to call the expert as a witness at the trial, the fair and orderly administration of justice requires that the defense, if requested by the State in the course of discovery, indicate whether it has obtained any such report. If the defense response is in the affirmative, discovery

of the report must be granted to the State. If, however, the defense indicates it does not intend to use the report or the testimony at trial, it is not discoverable. Only with the consent of the trial court may the defense subsequently alter its original position with respect to the use of the expert report or testimony at trial. The restriction is analogous to that set forth in our criminal practice rules concerning discovery by the State of the intended use by the defense of an alibi. See *R.* 3 :11–1 *et seq.* We find the same considerations of fairness and efficient conduct of trials to be applicable here.

However, with respect to the adverse testimonial use of a defense expert's opinion, the situation differs. As noted, by signifying an intention to use the expert as a trial witness, the defense waives the confidentiality which otherwise attaches to the reports to which his contemplated testimony will relate. Those reports are thus rendered discoverable by the State. However, the defense does not waive its right to control the testimonial use of the expert — he remains unavailable to the State as a witness. The right to confidentiality we have recognized not only places limitations on prosecutorial discovery but also affords an evidentiary privilege. If the expert actually testifies for the defense concerning the substance of the reports he has rendered to defense counsel, the State remains able to effectively cross-examine him with respect thereto by reason of the discovery it has been granted. However, should the defense elect not to present the expert as a witness after previously indicating to the contrary, the fact that his otherwise confidential reports have been disclosed to the prosecution does not entitle the State to call the expert as its witness over objection by the defense. The testimony of a defense consultant concerning the substance of expert services he has performed for the defense is exclusively available to the defense. If the defense trial strategy results in his not being called to testify, his potential testimony on that subject remains privileged from use by the State.

 We accordingly hold that the report and testimony of a defense-retained expert consultant who will not testify as a defense witness and whose report will not be utilized as evidence are not available to the State. This rule will safeguard the internal strategic processes of the defense. The protection such a rule affords will enhance the ability of the defense attorney to provide effective representation by affording him the maximum freedom to seek the guidance of expert advice in assessing the soundness and advisability of offering a particular defense without the fear that any unfavorable material so obtained can be used against his client. A defense attorney should be completely free and unfettered in making a decision as fundamental as that concerning the retention of an expert to assist him. Reliance upon the confidentiality of an expert's advice itself is a crucial aspect of a defense attorney's ability to consult with and advise his client. If the confidentiality of that advice cannot be anticipated, the attorney might well forego seeking such assistance, to the consequent detriment of his client's cause. The protection from unwarranted disclosure we today mandate is an indispensable element of a criminal defendant's constitutional right to the effective assistance of counsel.

Our ruling will not in any way hamper the State's ability to effectively prosecute its case. In the vast majority of cases, the State will be able to obtain its own expert on any matter as to which it considers expert testimony potentially necessary.[3] The interests of justice are considerably advanced when a defendant receives the most effective assistance of counsel possible. Since the State's primary interest is not to convict but to see that justice is done, it, as well as de-

---

[3]In the rare case involving a subject as to which the number of qualified experts is few, any danger that the defense might deprive the State of expert assistance by "scooping-up" all the available experts in the field, see *Pouncy v. State, supra,* 353 *So.* 2d at 642, can be prevented by appropriate judicial action.

fense attorneys, should welcome the positive effect our decision will have on the administration of criminal justice in New Jersey.

## II

The rulings below permitting prosecutorial discovery of the handwriting expert's report and use of the expert as a witness for the State improperly intruded into the zone of confidentiality essential to defendant's meaningful enjoyment of his right to effective representation by counsel. Nevertheless, we are satisfied that in the unique circumstances of this case the impropriety was harmless and incapable of producing an unjust result. *R.* 2:10–2. The defendant conceded at trial that he had indeed authored the note introduced into evidence by the State and analyzed by the expert. Thus, the only issue between the State and the defense concerning the note was whether the defendant had written the directions on that piece of paper for the rape victim, as she had testified, or whether it was the police who asked defendant to write the words appearing on the paper as an exemplar of his handwriting, as defendant testified was the true origin of the exhibit. With the authorship issue effectively removed from the case by reason of defendant's concession, the testimony by the expert indicating that his analysis had reached the same conclusion was merely cumulative and worked no prejudice to defendant's cause.

The issue of the authenticity of the note was fairly disputed by the proofs, with the jury evidently crediting the testimony of the State's witnesses that the note introduced in evidence was indeed the note written at the scene of the crime. Since there was no dispute with respect to defendant's authorship of the note, his conviction is most accurately attributable to the jury's adverse determination on the authenticity issue. We are convinced that any prejudice allegedly stemming from the expert's testimony on behalf of the State was not the cause of defendant's conviction. In

short, defendant's admission that he wrote the note introduced into evidence, a concession prompted by the incriminating potential of the unfavorable conclusions of the handwriting expert, eliminated any possibility that the State was unfairly advantaged by its use of that expert to testify concerning those same conclusions at defendant's trial. Although henceforth such a tactic by the State will be impermissible by reason of our ruling herein, we are unable to say that there has been any subversion of the adversary system of criminal justice in this particular case.

We find no merit in defendant's allegations that the pretrial identification procedures employed herein and certain comments made by the prosecutor during the trial were prejudicial. Accordingly, the judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice HUGHES, Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER, and Judge CONFORD—7.

*For reversal*—None.