UNITED STATES of America

v.

**Tyrone WALKER, Walter Diaz and Anthony Walker aka Tony Walker.**

**No. 3–94–CR–328–ALL.**

United States District Court, N.D. New York.

Nov. 28, 1995.

United States Attorney, Binghamton, NY, for Government; Miroslav Lovric and Bernard J. Malone, Jr., Asst. U.S. Attys., of counsel.

Hinman, Howard & Kattel, Binghamton, New York; Albert Millus, of counsel and Ruhnke & Barret, West Orange, NJ; David A. Ruhnke, of counsel, for Defendant Tyrone Walker.

Peter Orville, P.C., Vestal, New York and Carl J. Herman, Livingston, New Jersey, for Defendant Walter Diaz.

Richard Allen, Binghamton, New York, for Defendant Anthony Walker.

## MEMORANDUM DECISION & ORDER

McAVOY, Chief Judge.

The government has indicated that it intends to call two defense-retained experts whom the defense does not at this time intend to call as witnesses. They are Donald Frangipani, a ballistics expert previously retained by Walter Diaz's attorney in a New York State prosecution, and John Dillon, a ballistics expert retained by defendant Tyr-

one Walker to assist in the defense of this prosecution. Unfortunately, the government saw fit to forecast its intentions to the jury in its opening statement instead of taking the more prudent course of seeking an *in limine* ruling on this testimony, the admissibility of which the government knew was disputed by the defendants.

The defendants object to the government's calling as its own witnesses the defenses' consultative, non-testifying experts. The defense claims that these experts were retained to investigate the government's ballistics evidence on the defendants' behalf and to assist these defendants' attorneys in preparing a defense to the criminal charges facing their clients. Furthermore, defendant Tyrone Walker asserts that John Dillon is still under retainer to the defense and is providing ongoing consulting services. The defendants also seek a declaration of mistrial because of the government's statement in their opening that it intended to call an expert "hired by one of the defendants here" to examine the shell casings and who had "concluded that the ballistics expert from the NYPD was correct." [Tr. of 11/16/95 at pp. 43, 44].

## I. ADMISSIBILITY OF THE PROFFERED TESTIMONY

### a. Cumulative Evidence:

For purposes of this initial discussion the Court will set aside the very difficult question of under what circumstances the government can call to the witness stand as *its* witnesses, the defendants' non-testifying consultative experts. Looking solely at the government's expressed intention to call Frangipani and Dillon as ballistics experts who, it believes, will duplicate the testimony of the government's expert, and therefore buttress the conclusions of the government's expert, the Court holds that such testimony is simply cumulative and inadmissible under Rule of Evidence 403.

■ The government has already indicated that it intends to call its own ballistics expert. This Court has never in the past allowed the government to make its case through the sheer weight of successive expert testimony by even two experts as to their identical conclusions on identical issues,

let alone the three experts that the government seeks to introduce on the single issue of whether or not the gun that killed Monsour was the same gun allegedly recovered in Brooklyn on the day of the Muskin robbery. Nor is the Court inclined to permit such repetitive and cumulative proof in this already lengthy prosecution.

### b. Confusion of the Issues:

■ Beyond the cumulative aspect of the government's proof, and still without deciding whether in any circumstance the government could properly call these defense-retained consultative experts, in no event would the Court allow the government to identify these witnesses as the "defendants' own experts," as the government improperly did in its opening. Other courts that have considered the question have recognized the important evidentiary rationales underlying such a restriction. *See Steele v. Seglie,* 1986 WL 30765 at 4 (D.Kan. Mar 27, 1986); *Sun Charm Ranch, Inc. v. Orlando,* 407 So.2d 938, 940–41 (Fla.Dist.Ct.App.1981). Indeed, even the Fifth Circuit case most strongly urged by the government in support of its position expressly recognizes that in that case, the district court overruled that defendant's objection to the government's use of his expert *with the reservation that the government not comment upon the fact of the expert's previous employment by defense counsel. See United States v. Pipkins,* 528 F.2d 559, 561 (5th Cir.), *cert. denied,* 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976). The government's other most persuasive authority, *People v. Greene,* 153 A.D.2d 439, 552 N.Y.S.2d 640 (App.Div.2d Dept.), *cert denied* 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990), stresses that "at no time did the defense counsel specifically request that the prosecutor be precluded from indicating that the witness was originally retained by defense counsel." *Greene,* 552 N.Y.S.2d at 645. The *Greene* Court especially notes that in that appeal, the defendant's claims of undue prejudice from introduction of the fact that the expert had been originally retained by defense counsel were not preserved for review as a matter of law.

In the case at hand, the Court first notes that the fact that these experts were earlier retained by the defendants has no relevance to any issue before this jury.

Second, identifying these experts as "the defenses' own" serves only to invite the jury to give undue weight to these witnesses opinions. Indeed, that characterization forces the defendants to involuntarily "vouch for" the credibility of experts that they have decided not to call as witnesses. Forcing the defendants into that posture risks unfairly neutralizing the effect of any otherwise proper impeachment of these witnesses the defense might undertake.

Third, in criminal proceedings much may turn on the jury's assessment of the candor and credibility of a defendant's attorneys. The jury makes that assessment unfamiliar with the adversary process, a defense attorney's duties in fully exploring the government's case against his client, and the role an attorney plays in developing and presenting expert testimony. To permit the government to stress that the defense was in possession of an expert's negative conclusions but declined to place those conclusions before the jury, raises a real danger of the jury concluding that the defense had improperly attempted to suppress adverse facts or opinions. In light of the distinct possibility of such negative inferences, "the probative value of such evidence [is] thus ... substantially outweighed by its attendant danger of unfair prejudice." *Steele*, cited above, at 4–5. It follows then that under this Court's Rule 403 balancing, any reference to the defense's prior employment of these experts must be precluded.

### c. Work–Product Privilege:

▮ Notwithstanding the Court's conclusions that the contested testimony is both cumulative and unduly prejudicial, the Court has examined the persuasive authority proffered by both sides regarding the government's proposed use of the defenses' non-testifying, consultative experts. The Court concludes that the government should be precluded from eliciting testimony from the defenses' experts concerning the efforts they undertook at the request of defendants' attorneys, or the opinions and conclusions they developed at the behest of defendants' attorneys, unless the government first makes a showing of substantial need of that testimony and inability to obtain the substantial equivalent of that testimony without undue hardship. *Compare* Fed.R.Civ.P Rule 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 509–10, 67 S.Ct. 385, 392–93, 91 L.Ed. 451 (1947). The Court's conclusion is grounded in a practical application of the "work-product" doctrine. While the New Jersey Supreme Court grounded its arguably broader conclusions in *State v. Mingo* 77 N.J. 576, 392 A.2d 590 (1978), in the Sixth Amendment right to effective assistance of counsel, that Court's analysis applies with equal force here:

> To safeguard the defense attorney's ability to provide ... effective assistance ... it is essential that he be permitted full investigative latitude in developing a meritorious defense on his client's behalf. This latitude will be circumscribed if defense counsel must risk a potentially crippling revelation to the State of information discovered in the course of investigation which he chooses not to use at trial.

*Mingo,* 77 N.J. at 581–82, 392 A.2d 590.

Initially, the Court notes that exhaustive research has disclosed no criminal case in which a federal court has permitted the government to elicit testimony from a defendant's consultative expert concerning that expert's efforts or opinions undertaken or developed at the request of a defense attorney in preparation for a criminal trial. *United States v. Pipkins* is not to the contrary and is distinguishable both legally and factually. Legally, *Pipkins* considered only an attorney-client privilege objection to the testimony of a defense retained hand-writing expert. The Fifth Circuit held that since the writing samples were non-confidential and voluntarily given, "Pipkins failed to establish that his handwriting samples were confidential communications within the ambit of the attorney-client privilege." *Pipkins* at 563. This is not the objection which is interposed here.

More importantly, *Pipkins* posed a far less troublesome problem. In that case the defendant's expert was never questioned about the results of the test he conducted at the

behest of defense counsel. *Pipkins'* expert was simply called to the stand and asked to perform a comparison of the defendant's handwriting. The Fifth Circuit expressly noted that it did not therein "confront testimony which necessarily 'comprehended conclusions drawn in the course of an association that is uniquely regarded in law.'" *Pipkins* at 564 (citation omitted).

Here, the government seeks exactly that which the Fifth Circuit did not address: testimony which necessarily comprehends conclusions drawn in the course of an attorney-expert association undertaken to assist the attorney in his preparation of trial strategy. The government herein seeks to introduce the testimony of Frangipani and Dillon as to the very efforts they undertook, and the opinions and conclusions they developed, in consultation with and at the request of these defendants' attorneys, as those attorneys attempted to prepare a defense to these criminal charges. The Court concludes that these experts' opinions and conclusions, developed as they were at the request of the defendants' attorneys in preparation for defending this prosecution, are far more akin to attorney work product then they are to "simple relevant testimony" as the government would have it, and should enjoy similar qualified protection. As the Supreme Court held in *United States v. Nobles,* 422 U.S. 225, 241, 95 S.Ct. 2160, 2171, 45 L.Ed.2d 141 (1975):

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of these realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials-in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*Nobles,* 422 U.S. at 241, 95 S.Ct. at 2171.

■ It is undisputed that the opinions and conclusions the government seeks to introduce in its case-in-chief were developed at the request of, and in consultation with, the defendants' attorneys for use within those attorney's internal strategic processes. Applying the foregoing principles of *Nobles,* the Court concludes that, absent a showing of substantial need and undue hardship, the government should be precluded from eliciting testimony from the defenses' consultative experts concerning the efforts these experts undertook at the request of the defendants' attorneys, or the opinions and conclusions these experts developed at the behest of defendants' attorneys, "in the compilation of materials in preparation for trial." *Nobles,* 422 U.S. at 238–39, 95 S.Ct. at 2169–70. Absent such an area of qualified privileged within which to prepare for trial a criminal defendants' preparation can only be crippled by the prospect of creating an unfavorable witness every time he attempts to obtain an unbiased assessment of the government's evidence by consulting an expert. *Compare United States v. Alvarez,* 519 F.2d 1036, 1046–47 (3rd Cir.1975) ("The issue here is whether a defense counsel in a case involving a potential defense of insanity must run the risk that a psychiatric expert whom he hires to advise him with respect to the defendant's mental condition may be forced to be an involuntary government witness. The effect of such rule would, we think, have the inevitable effect of depriving defendants of the effective assistance of counsel in such cases.... The attorney must be free to make an informed judgment with respect to the best course for the defense without the inhibition of creating a potential government witness").

Of course the qualified work product privilege recognized here is waived if the defense chooses to place its consultative expert on the witness stand. *See Nobles,* 422 U.S. at 241–42, 95 S.Ct. at 2171–72. Nor would this narrow and qualified privilege prevent the government's use of such testimony if it could establish substantial necessity and undue hardship. *Compare Morris v. State,* 59 Md.App. 659, 477 A.2d 1206, 1211–12 (1984) (Allowing the prosecution to summon an expert originally retained by the defense because the expert's tests on the accused's clothing destroyed the clothing). Nor would

this privilege protect the testimony of a defense-retained expert who was also a "fact-witness." In this regard, the government's argument that these experts are simply "witnesses who possess relevant information" disingenuously disregards the fact that the only relevant information they possess was either disclosed to them by the defendants' attorneys during consultation, or developed by them at the request of defendants' attorneys to assist those attorneys in "assembl[ing] information, sift[ing] what [they] consider to be the relevant from the irrelevant facts, prepar[ing their] legal theories and plan[ning their] strategy without undue and needless interference." *Hickman*, 329 U.S. at 510–11, 67 S.Ct. at 392–93. The consultative opinions and conclusions here are not transformed into testimonial "facts" by the government's tautological argument that they intend to explore the "fact" that these experts developed and held opinions as to the evidence the government seeks to rely on.

It follows then, that even if the government could somehow overcome the cumulative aspect of this testimony, and further, could avoid the undue prejudice inherent in identifying these experts as "defendants' own," the Court would still preclude the government from calling Dillon or Frangipani, unless the government showed either a) that these experts could offer relevant testimony on issues beyond the efforts they undertook in consultation with the defense, or, b) that testimony by those experts regarding their efforts undertaken and opinions and conclusions developed at the request of the defendants' attorneys was required by substantial necessity and undue hardship.

These are relatively uncharted waters and the case-law is an insufficient and contradictory navigational aid. I also recognize that the judge-made work-product doctrine I am working from is generally applied as a privilege against the pre-trial discovery of tangible evidence. The Court, however, perceives little distinction between the Sixth Amendment and fairness concerns that would be raised by an attempt by the government to compel disclosure of a non-testifying consultative expert's *report* containing his opinions

and conclusions developed at the request of defendants' attorneys in preparing their trial strategy, and the concerns raised by the government's attempt here to compel disclosure of the identical information testimonially. *Hickman* itself noted that work product is reflected "in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed ... the 'work product of the lawyer.'" *Hickman*, 329 U.S. at 511, 67 S.Ct. at 393.

Furthermore, as the Supreme Court indicated in *Nobles*, "the concerns reflected in the work-product doctrine do not disappear once trial has begun. Disclosure of an attorney's efforts at trial, as surely as disclosure during pre-trial discovery, could disrupt the orderly development and presentation of his case." *Nobles* 422 U.S. at 239, 95 S.Ct. at 2170. In this case the unwarranted and undesirable aspects of the government's proposed intrusion into the defendants' trial preparation is brought into sharper focus in light of defendant Walker's assertion that Mr. Dillon is still under retainer to the defense and is providing ongoing consultative services. The Court's concern that these defendants enjoy the freedom to seek expert guidance without fear that any unfavorable material thereby developed will be used against them is likewise sharply focused given the extremity of the sentence which might follow a less than fully conceived defense in this case.

The Court agrees with the New Jersey Supreme Court's conclusions that:

A defense attorney should be completely free and unfettered in making a decision as fundamental as that concerning retention of an expert to assist him. Reliance upon the confidentiality of an expert's advice itself is a crucial aspect of a defense attorney's ability to consult with and advise his client. If the confidentiality of that advice cannot be anticipated, the attorney might well forego seeking such assistance to the consequent detriment of his client's cause.

*Mingo*, 77 N.J. at 576, 392 A.2d 590. The *Nobles* Court likewise concluded that "the interests of society and the accused in obtain-

ing a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." *Nobles,* 422 U.S. at 236, 95 S.Ct. at 2168. In this Court's view, application of the work-product doctrine offers the soundest method of protecting these defense attorneys' orderly development and presentation of their cases, and these defendants' Sixth Amendment rights to effective assistance of counsel, while at the same time facilitating the search for truth which is the object of this trial.

## II. THE MOTION FOR MISTRIAL

While the Court has decided that the government should not be allowed to call the defendants' consultative experts under the showing they have made, the Court does not find that the government's references to that testimony are incurably prejudicial or demand a declaration of mistrial.

■ First of all, the Court and each attorney who addressed the jury reminded them over and over that nothing in the openings was to be considered evidence. Second, essentially what we have is one reference within the government's two hour opening—I seriously question whether any juror will even remember, let alone be seriously prejudiced by that one reference packed within the government's litany of proposed witnesses. Third, to the extent that any juror is now eagerly awaiting this testimony, the government's inability to produce may well rebound to the defendants' benefit and the government's detriment. Fourth, the reference itself characterized the disputed witness's testimony as cumulative to that of an expert who the government intends to call and whose testimony will likely be admissible. Finally, as unnecessary as it was, I don't think the U.S. Attorney's second and more oblique reference[1] to this disputed evidence substantially expanded the problem or rendered any theoretical prejudice incurable. Counsel are also reminded that I gave a

curative instruction at the defenses' request at the time that second comment was made.

On these bases then, its hard for the Court to perceive a substantial and incurable prejudicial effect from those remarks. Nor do I think the relevant case-law I have examined warrants a declaration of mistrial. *See, United States v. Espinal,* 981 F.2d 664 (2d Cir.1992); *United States v. White,* 486 F.2d 204 (2d Cir.1973); *United States v. DeRosa,* 548 F.2d 464 (3rd Cir.1977); *See in particular, Mingo,* 77 N.J. at 576, 392 A.2d 590 (holding that the *actual admission* of such evidence, which was only *referenced in opening* here, was improper but was not *per se* harmful error or incurably prejudicial given its cumulative nature).

The Court is unsure whether any further curative instruction is even necessary and I am reluctant to call further attention to such minimal references through a specifically curative instruction. I do think, however, that any possible lingering prejudice could be dealt with by a reminder to the jury of the general principle that was stated over and over at openings: that openings are not evidence. I therefore propose offering the following instruction:

I want to remind you again that nothing stated in the attorneys' opening remarks was evidence. In their opening, the government indicated to you the various propositions that they intended to prove in this trial and further indicated what evidence and witnesses they expected to put before you to establish those propositions.

It may well turn out that the parties cannot produce all of the evidence and witnesses that they thought they could present when they gave their openings. My point is that you should not and may not give any evidentiary weight to the attorneys' forecasts of the evidence and witnesses they will introduce—You must wait until the evidence and witnesses are admitted and properly before you before allowing such to play a role in your assessment of the case.

---

1. One of defendants' counsel objected to the introduction of a shell casing on the basis of unexplained initials which appeared on the casing. The U.S. Attorney, in the jury's presence, responded: "I believe [another defense attorney] knows the answer to that. Some discussion we had yesterday about someone that looked at those, your honor." [Tr. Of 11/17/95 at p. 32].

I would also be open to considering a defense request for a missing witness charge at the close of the evidence, particularly in light of the fact that the government could have completely avoided this problem by seeking an *in limine* ruling.

**IT IS SO ORDERED.**