DECISION
Before this Court is the application of the petitioner for postconviction relief. In support of his application, the petitioner moves for summary judgment to which the respondent files an objection.
 FACTS AND TRAVEL
The petitioner was indicted in P1/01-1980AG charging him with robbery in the first degree; carrying a handgun after being previously convicted in the State of Rhode Island of a crime of violence; using a firearm while in the commission of a crime of violence; and carrying a handgun on his person without a license. The jury acquitted the petitioner of the three weapons offenses but convicted him of first degree robbery. After his motion for a new trial was denied, the defendant was sentenced to the ACI for 25 years, the execution of ten years of said sentence suspended with ten years probation to commence upon his release. The conviction was affirmed by the Supreme Court in State v. Arroyo,844 A.2d 163.
The defendant filed a pro se application for post-conviction relief 04-PM 2488. Pursuant to § 10-9.1-5, this Court appointed present counsel to represent the defendant and counsel filed an "amended" application for the defendant/petitioner. In essence the amended application alleges that:
 1. Petitioner was denied his right to effective assistance of counsel. *Page 2 
 2. Petitioner was denied his right for a fair trial.
 3. Petitioner was denied his right to be free from unlawful searches and seizures.
 4. Petitioner was denied the confidentiality protected by the attorney-client privilege and the confidentiality of the work product doctrine.
 5. Petitioner was denied his constitutional privilege against self-incrimination.
 6. Petitioner was denied his right to confrontation and cross-examination. (See "Errata" filed April 9, 2007).
 CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL
In Strickland v. United States, 466 U. S. 668, 684 (19084), the Supreme Court of the United States held that the "Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental rights to a fair trial," Accord, Heath v. Vose, 747 A.2d 475, 477 (R.I. 2000). The right to counsel is critical to the proper functioning of our adversarial system of justice because "access to counsel's skill and knowledge is necessary to accord defendants the `ample opportunity to meet the case of the prosecution,' to which they are entitled." Id., quoting Adams v. United States ex rel. Mc Cann, 317 U. S. 269 (1942). The right to counsel is fundamental, and effective assistance of counsel is central to the implementation of that right. Id.
The Supreme Court of Rhode Island has adopted the Strickland standard for evaluating ineffective assistance claims. Heath v. Vose,supra. Under this standard, the core question is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.Strickland, supra; Heath v. Vose, supra. Individual cases are assessed under this standard using a two-prong analysis. Petitioner must show, first, that counsel's performance was deficient and that he/she made *Page 3 
error[s] so serious that he/she could not be functioning as counsel guaranteed by the Sixth Amendment; and, second, that counsel's deficient performance prejudiced the defense. Id.
Counsel's performance is deficient under the first prong of this test if his/her conduct fell below an objective standard of reasonableness.Strickland, supra. at 687-8; Heath v. Vose, supra, at 478. Counsel's acts or omissions must be outside the wide range of professionally competent assistance. Strickland at 690.
The second, prejudice portion of the ineffective assistance test "`requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. `" Id., quoting Strickland, supra at 694. The standard of prejudice applicable in ineffective assistance cases is lower than the standard applied to newly discovered evidence claims. Id, at 694.
The right to effective assistance of counsel may, in a particular case, be violated by even an isolated error if the error is sufficiently egregious and prejudicial. Murray v. Carrier, 477 U. S. 478, 496 (1986),United States v. Cronic, 466 U. S. 648, 657 n. 20 (1984);Strickland, supra. at 693-696.
 ". . .a court should keep in mind that the principles we have stated do not establish mechanical rules. Although these principles should guide the process of decision, the ultimate focus of the inquiry must be on the fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite a strong presumption of reliability, the result of a particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Strickland, supra. at 696.
What acts or omissions of trial counsel are alleged that were outside the wide range of professionally competent assistance of counsel guaranteed under Strickland? *Page 4 
 1. Trial counsel failed to file discovery motions:
 Although the record reflects that trial counsel did not file for discovery under Rule 16 of the Superior Court Rules of Criminal Procedure, failure in itself does not support a finding of ineffective assistance. In the circumstances of this case, counsel for the defendant was provided with a full and complete police package. Indeed, everything that defendant would have received pursuant to a Rule 16 request was, in fact, provided to counsel well in advance of trial. Certainly, the decision in this case not to file a Rule 16 request cannot be said to be below the standard of competence expected of trial counsel.
 2. Trial counsel's failure to elicit testimony regarding the defendant's physical characteristics:
 The victim in this case, Mr. Lam, acknowledged that he paid little attention to the person who entered his restaurant and later robbed him. Because of the very limited time the victim looked at his assailant and the fact that he was looking at the gun, not the perpetrator when robbed, it is reasonable to understand why Lam was not able to give a detailed and completely accurate description of the defendant. The critical evidence in this case was the identification of the fingerprints on the container of orange juice, touched by the assailant, and left on the counter which was *Page 5 
retrieved, examined, and identified by the police. Counsel's alleged failure to elicit testimony regarding the defendant's physical characteristics, including the mug shot taken at the time of arrest in the circumstances presented, was not below the standard of competence required.
 3. Trial counsel's failure to file a motion to suppress search of petitioner's apartment and the fact he elicited incriminating evidence on cross-examination that were the fruits of a warrantless search of his dwelling:
 The defendant was arrested pursuant to an arrest warrant and immediately taken outside of his apartment. His apartment was searched without a warrant for the gun used and money taken from the robbery. The police found neither. They did find a green fleece which did not match the description given by the victim of the clothing worn by the perpetrator and also found a head bandana which was not identified by the victim as the one worn by the perpetrator. It is reasonable to infer the strategy of counsel was to show neither a gun nor money was found in the apartment. It cannot be said that such strategy was below that of competent counsel.
 4. Trial counsel's failure to object to the testimony of Major John Powers who was engaged as a defense expert, but who was called by the prosecutor, thus violating attorney-client privilege, the work product doctrine and his right to the effective assistance of counsel:
a. Violation of the Attorney-Client Privilege *Page 6 
 Petitioner contends the attorney-client privilege was breached when the Court allowed the State to call his expert, Major Powers, to testify. This Court must acknowledge that in its recollection of the testimony presented and review of its notes, I found Major Powers to be the most critical witness against the defendant. Without his testimony, I doubt the defendant would have been convicted. Allowing Major Powers to be called as a witness for the prosecution, petitioner claims, resulted in him receiving ineffective assistance of counsel, a violation of his Sixth Amendment right to a fair trial. While petitioner discusses attorney-client privilege and cites to a number of different cases, this particular doctrine is not likely applicable to the unique set of facts presented by the case at hand. The attorney-client privilege pertains to protect only confidential communications between an attorney (or an attorney's agent) and a client in anticipation of litigation. People v. Speck, 242 N.E.2d 208, 221. In most of the cases petitioner cites where a court ruled that a defendant was denied effective assistance of counsel because of a violation of the attorney-client privilege, the facts indicate that there had been some type of confidential communication made between the client and the expert and the State subsequently called the defense expert in order to have the expert testify as to either what was said during that confidential meeting, or what conclusions the expert reached based on what was said during such a meeting. An example of this can be found in the Alvarez case. United States v. Alvarez, 519 F.2d 1036.
 In Alvarez, the court found a violation of a defendant's Sixth Amendment attorney-client privilege where a defense expert, a psychiatrist in that case, was *Page 7 
used by the prosecution as a witness in a proceeding to determine the defendant's competency to stand trial. Id. at 1046-47. The expert had examined the defendant and come to the conclusion that the defendant knew what he was doing was wrong and that he did not lack substantial capacity to conform his conduct to the requirements of the law. Id. at 1045. Defense counsel in the case decided to refrain from using the expert as a witness, but the State issued a subpoena ordering the expert to testify as a witness in its case-in-chief. Id. The defense argued that the State's actions violated the Fifth Amendment right against selfincrimination, the Sixth Amendment right to effective assistance of counsel, and attorney-client privilege. Id. at 1045. In reaching a conclusion, the court stated that communications to an accountant in anticipation of litigation are protected by the attorney-client privilege. Id. The court further noted that there was no difference between a defense counsel's need for expert assistance in accounting and in psychiatry: "The effective assistance of counsel demands recognition that a defendant be as free to communicate with a psychiatric expert as with the attorney." Id. at 1045.
 The court further reasoned that by accepting the government's argument, defense counsel would run the risk that an expert be retained for advice and assistance might be forced to serve involuntarily as a government witness. Id. The court also stated that such a rule would have the inevitable effect of depriving defendants of the effective assistance of counsel. Id. Thus, the court held that what it characterized as the Sixth Amendment attorney-client privilege would apply to protect reports and potential testimony of non-testifying experts retained *Page 8 
by the defense when such reports and testimony are derived from communications with defendant or defendant's attorney. Id. at 1047; see also State v. Kociolek, 129 A.2d 417 (1957)("Any communication by the defendant to the psychiatric expert retained by the defense in the course of his examination was the equivalent of a communication by the defendant as to the attorney himself and thus protected under attorney-client privilege").
 In the present case, a key factual difference between it and the Alvarez case (and the other similar attorney-client privilege cases petitioner cites to) is that while in both instances defense counsel retained an expert to help prepare for trial, the nature of that preparation is the distinguishing factor. In Alvarez, the expert conducted a psychiatric examination of the defendant, during which the defendant communicated with the expert. Alvarez, 519 F.2d at 1045. It was based on the expert's conclusions made pursuant to this evaluation that the State called him to elicit testimony that would convince the jury that the defendant was competent to stand trial. Id. The expert made his conclusions and formed his opinions regarding the defendant's competency based on those confidential communications obtained during the psychiatric exam. Id. Without having been privy to such communications, the expert would not have been able to offer any meaningful opinion as to the competency of the defendant. However, in this case, the fingerprint expert retained by the defense did not need to evaluate the defendant in order to formulate opinions. On the contrary, the fingerprint expert was needed only to perform an objective evaluation of the fingerprints on the *Page 9 
orange juice carton and simply determine if the fingerprints on the carton left at the crime scene matched those of the defendant.
 When the State called Major Powers as a witness, what the State wanted him to testify about was: (a) his impressive credentials and experience as a fingerprint specialist; and (b) what conclusions he came to regarding his examination of the fingerprints. The key difference between Major Powers' testimony in this case and the defense expert's testimony in Alvarez is that here, Major Powers testimony was based on objective conclusions formulated by conducting an independent fingerprint analysis. Major Powers' conclusions as to whose fingerprints are on the juice carton are not based on opinions developed from communication with the defendant, but rather based on his own independent professional evaluation of the fingerprints. The important distinction here is that there is a difference between testimony as to confidential communications that oceurred between the client and a defense-retained expert and testimony regarding things which the expert observed or discovered himself, and not related to the content or substance of any confidential communication with the client. Hutchinson v. People, supra at 889; see also United States v. Pipkins, 528 F.2d 559, 563 (5th
Cir.) ("As a general rule, identifying physical characteristics such as one's style of handwriting, readily observable by anyone are not subject to the attorney-client privilege"); State v. Regier, 621 P.2d 431 (1980) (the disclosure of physical characteristics is not a confidential communication under the attorney-client privilege).
 b. Violation of the Work-Product Doctrine *Page 10 
 As with the attorney-client privilege argument, this argument advanced by petitioner also contends that due to the fact that this doctrine was breached when the Court allowed the State to call Major Powers to testify, he received ineffective assistance of counsel that resulted in a violation of his Sixth Amendment right to a fair trial. However, contrary to the attorney-client privilege argument, cases cited by petitioner regarding the work-product doctrine — specifically United States v. Walker and Commonwealth of Pennsylvania v. Kennedy — seem to be much more factually similar to the present case at bar. United States v. Walker, 910 F.Supp. 861 (N.D.N.Y.1995); Commonwealth of Pennsylvania v. Kennedy, 876 A.2d 939 (Pa. 2005).
 i. United States v. Walker In Walker, the defendants objected to the State's calling as its own witnesses the defenses' non-testifying, consultative ballistics experts in a murder prosecution. Walker at 863. The defense claimed that the experts were retained to investigate the government's ballistics evidence on the defendants' behalf and to assist the defense attorneys in preparing a defense to the criminal charges facing their client. Id. Grounding its decision in a practical application of the work-product doctrine, the court ruled that the government should be prevented from eliciting testimony from defenses' experts concerning the efforts they undertook at the request of defendants' attorneys, or the opinions and conclusions they developed at the request of defendants' attorneys, unless the government meets both standards of a two-pronged test: (a) the government makes a showing of substantial need of the testimony; and (b) an inability to obtain the substantial *Page 11 
equivalent of that testimony without undue hardship. Id at 864. The court reasoned with the experts' opinions and conclusions developed at the request of the defendants' attorneys are more similar to attorney work product then to "simple relevant testimony," and should enjoy similar qualified protection. Id. at 865. In support of its reasoning, the court referred to the ruling set forth by the United States Supreme Court in United States v. Nobles, 422 U.S. 225:
 "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of these realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." Nobles at 241.
 Additionally, the court proclaimed that absent such an area of qualified privilege within which to prepare for trial, a criminal defendants' preparation can only be hindered by the prospect of potentially creating an unfavorable government witness. every time s/he attempts to obtain an unbiased assessment of the government's evidence by consulting an expert. Walker, at 865; see also Alvarez, at 1046-47 ("The issue is whether a defense counsel runs the risk that an expert whom he hires to help advise him may be forced to be an involuntary government witness. The effect of such a rule would, we think, have the inevitable effect of depriving defendants of effective assistance of counsel in such cases . . . the attorney must be free to make an informed judgment with respect to the best course for the defense without the inhibition of creating a potential government witness."). *Page 12 
 There are many similarities between the Walker case and the present case. First, like in Walker, where the State attempted to call the defenses' experts concerning efforts they undertook at the request of defendants' attorneys, here, the main reason why the State called Major Powers to testify was to elicit from him testimony regarding efforts he undertook at the request of petitioner's trial counsel — more specifically, the conclusions and opinions he developed based on his analysis of the fingerprints. Walker, at 864. Secondly, in both this case and the Walker case, defense counsel never intended to and never did call the expert(s) as a witness. Id. at 865. This second similarity is one of particular distinction because in the Walker case, the court expresses the fact that while this work-product doctrine should ordinarily preclude the State from using the nontestifying defense expert as a witness in its case-in-chief, the court also states that this protection is a qualified one, and can be waived if the defense chooses to actually place its expert on the stand. Id. However, in neither the Walker case or in this case did the defense ever put the expert on the witness stand. Id.
 Another similarity is that both in this case and the Walker case, the defense experts simply performed independent evaluations of physical evidence in order to advise defense counsel in preparation for trial. Id. Specifically, in Walker, the experts (ballistics experts) examined ballistics evidence that the State claimed tied the defendant to the murder, while in this case, petitioner's defense counsel retained Major Powers to examine and analyze the fingerprint evidence the State claimed linked petitioner to the robbery scene. Id. Finally, in neither case was the State able to overcome the work-product doctrine by meeting the *Page 13 
two-pronged test enunciated by the court in Walker that consists of showing both: (a) a substantial need for the testimony; and (b) an inability to obtain the substantial equivalent of the testimony without undue hardship. Id. at 866. In the Walker case, the State was fully capable of hiring its own ballistics expert without suffering any undue hardship. Likewise, in this case, not only was the State fully capable of retaining a fingerprint expert, the State actually did do so and had him testify.
 ii. Commonwealth of Pennsylvania v. Kennedy In Kennedy, the defendant, as a prime suspect in a murder investigation, was required to submit a blood sample which the State used to conduct DNA analysis with the bloody pair of jeans found at the crime scene. Kennedy, 876 A2d at 940. The test came back a match, and subsequently led to the defendant's arrest. Id. Prior to trial, the defense requested and was granted an opportunity to have the jeans, along with a sample of the defendant's blood, independently tested by a DNA expert of its choice. Id. at 941. The State then filed a Petition requesting the presence of the DNA expert that had conducted the test for the defense as a material witness in the State's case-in-chief. Id. In response, the defense filed a Motion to Quash the Petition, claiming that the State was attempting to subpoena the reports, records and results of DNA testing performed by an agent retained by the defense to assist in providing legal services and advice to the defendant. Id. at 942. The defense further claims that it never had any intentions of using the expert as a witness. Id. at 944. Thus, much like the Walker case and the present case, the court was faced with determining whether a *Page 14 
court can compel an expert, who was originally hired by a criminal defendant's attorney, to testify at a defendant's trial for the State, where the defendant does not plan on calling the expert to testify as a witness at trial. Id. at 945. The defense argued that allowing such testimony would violate attorney-client privilege and the work-product doctrine, thus denying the defendant effective assistance of counsel. Id. at 944. The court decided to resole the issue under the work-product doctrine, and not attorney-client privilege. Id. at 945.
 First, the court states that there are many reasons why the protection of the work-product doctrine is needed in the context of criminal discovery, the most pertinent of which the court proclaims is that the doctrine:
 "promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." Id at 948.
 Furthermore, the court agrees with the United States Supreme Court's opinion in Nobles which stated, "the concerns reflected in the work-product doctrine do not disappear once trial has begun," and disclosures of a lawyer's efforts once trial has begun could disrupt the presentation of his case just as easily as disclosure during pre-trial discovery which the work-product doctrine has traditionally been attached to. Id. The court then goes a step further and states that the same holds true at trial regarding disclosure of efforts of an agent retained by a criminal defense attorney. Id. The courts states that if the State were allowed to call such an agent as a witness in its case-in-chief, then the mission of the criminal defense attorney to investigate thoroughly the evidence against his or her client would be unjustifiably hampered. Id. It is further noted that if such a situation were *Page 15 
allowed to occur, criminal defense attorneys would find themselves in the position of independently investigating evidence that may exonerate their clients, while at the same time, risking the creation of evidence against their clients. Id; see also Walker, 910 F. Supp. At 866 ("a defense attorney should be completely free and unfettered in making a decision as fundamental as that concerning retention of an expert to assist him. . . . If the confidentiality of that advice cannot be anticipated, the attorney might well forego seeking such assistance to the consequent detriment of his client's case.").
 Therefore, in an effort to prevent circumvention of the purpose of the work-product doctrine, the court opted for a practical application of the work product doctrine to trial in criminal proceedings. Kennedy, 876 A.2d 939-49. Such an application would prevent the State from calling as a witness an agent who the defense hired in preparation for trial but decided not to call as a witness, absent a showing of substantial need for such testimony and an inability to obtain the substantial equivalent without undue hardship. Id.
 The similarities between the present case and the Kennedy case are striking. In both cases, the defense hired an independent expert to conduct an analysis of evidence the State had that allegedly linked the defendant to the crime scene. Id. at 939. In addition, in neither case did the defense ever plan to cal, or for that matter ever call, the expert as a witness at trial. Id. Moreover, in both instances, the State intended to (and in the present case actually did) call the defense-retained expert as a witness in its case-in-chief. Id. Finally, in neither case was the two-pronged substantial need and undue burden test complied with. *Page 16 
Id at 949. For instance, in Kennedy, the State conceded that it, had the blue jeans, had them tested, and is prepared to present its own expert witness," thus failing to make a sufficient showing of substantial need and undue hardship regarding the testimony of the defense expert. Id. In comparison, in the present case, the State had possession of the orange juice carton left at the crime scene; had the carton examined for fingerprints; had those fingerprints then analyzed so as to find a match; and was prepared to and did present its own expert witness at trial. Detective Firth.
c. Violation of the Defendant's Right toEffective Assistance of Counsel
In arguing the point that he was denied effective assistance of counsel, petitioner cites a third line of cases that do not address whether or not there was a violation of either the attorney-client privilege or the work-product doctrine. Rather, the cases indicate that just the mere act alone of the State calling the defense-retained expert as a witness in its case-in-chief, when the defense has no intentions of using the expert as a witness at trial, leads to the denial of effective assistance of counsel. There is one case inn particular cited by the petitioner that seems most relevant to the case at bar, State v.Mingo, 392 A.2d 590 (N.J. 2978).
 i. State v. Mingo
The Mingo case involved a defendant who was charged with rape and attempted robbery. Mingo, 392 A.2d at 591. Prior to trial, defense counsel sought to compel the State's production of a note allegedly written by the assailant for the purpose of having it examined and analyzed by a handwriting expert retained by the defense attorney. Id. The expert concluded that the same person had written each and gave a report to that *Page 17 
effect to defense counsel. Id. The defense attorney accordingly determined that he would not use the expert as a witness at trial.Id. However, pursuant to a discovery order, the State obtained a copy of the expert's report and, in view of its contents, subsequently subpoenaed the expert to testify on behalf of the State at trial.Id. at 591-592. Over objection by the defense, the trial court allowed the expert to testify in the State's case-in-chief. Id. at 592.
At trial, the expert described the results of his analysis of the handwriting samples for the court. Id. The defendant was than convicted and the conviction affirmed by the Appeals Court, Id. Subsequently, the New Jersey Supreme Court ruled that this practice violated the defendant's right to counsel under the Sixth Amendment. Id. at 595; see also Hutchinson v. People, 742 P.2d 875, 881 (Colo. 1987) (" . . . the prosecution's use of a defense expert in its case-in-chief in the absence of waiver or compelling justification violates a criminal defendant's constitutional right to effective assistance of counsel"). The court proclaimed that the State had no justification for calling the defense's handwriting expert as its witness and that the testimony of a defense consultant concerning the substance of expert services he has performed for the defense is exclusively available to the defense. Id. The court further stated that if the defense's trial strategy results in an expert not being called to testify the expert's potential testimony on that subject remains privileged from use by the State. Id. In explaining its rationale for the decision, the court stated:
 "The right to counsel afforded criminal defendants by the Sixth Amendment of the United States Constitution comprehends the right to effective assistance of counsel. To safeguard the defense attorney's ability to provide the effective assistance guaranteed by these constitutional provisions, it is essential that he be permitted full investigative latitude in developing a meritorious defense on his client's behalf. This latitude will be circumscribed if defense counsel must *Page 18 
risk a potentially crippling revelation to the Sate of information discovered in the course of investigation which he chooses not to use at trial." Id. at 592.
The court further reasoned that reliance upon the confidentiality of an expert's advice is a crucial aspect of a defense attorney's ability to consult with and advise his client. Id. If the confidentiality of that advice cannot be anticipated, the attorney might well forego seeking such assistance, to the detriment of his client. Id. Therefore, the protection such a ruling would provide is an essential element of a criminal defendant's right to the effective assistance of counsel. Id; see also Hutchinson, 742 P.2d at 881 ("It cannot be denied that a defense counsel's access to expert assistance is a crucial element in assuring a defendant's right to effective legal assistance, and ultimately, a fair trial.")
The basic facts of the present case at bar share many similarities with the facts presented in the Mingo case: (1) in both cases, the defense hired an expert to conduct an independent analysis of physical evidence the State claimed linked the defendant to the crime scene; (2) in each instance, after conducting tests, the expert affirmed the State's allegations; (3) in each case the defense chose not to introduce or use the expert as a witness at trial, while the State decided to call the expert as a witness in its case-in-chief and (4) in both cases, the State was fully capable of hiring its own expert, and in the case at bar, that is exactly what the State did. Id. at 590-95. Based upon the striking factual similarities between the two cases, it would certainly not be a stretch to apply the Court's rationale in Mango to the case at bar and decide that the petitioner was denied effective assistance of counsel due to the fact that the State was allowed to call Major Powers to testify as a witness in its case-in-chief. *Page 19 
 CONCLUSION
While there is no Rhode Island case law addressing this particular issue, it is apparent that this issue has been taken up by a number of courts outside of this jurisdiction. Depending on the specific factual circumstances presented by each case, some courts ruling that the State should not have been allowed to call the defense retained expert as a witness base the decision on one of two possibilities: (1) it would be a violation of attorney-client privilege; or (2) it would violate the work-product doctrine. However, regardless of which of these two rationales the courts use to base such a decision on, the basic outcome is the same — either because the attorney-client privilege or work-product doctrine was violated, the defendant was denied effective assistance of counsel, a violation of the Sixth Amendment right to a fair trial. In addition, some courts (such as in the Mingo case) do not even address any attorney-client privilege or work-product issues, but instead simply rule that by allowing the State to call the defense expert as a witness, the defendant is denied effective assistance of counsel . . . regardless of whether there was any attorney-client privilege or work-product doctrine violations. Mingo,392 A.2d at 590-95.
Accordingly, this Court is compelled to conclude that the failure of trial counsel to object to Major Powers being called to testify violated both the work-product doctrine and the defendant's right to the effective assistance of counsel. The petitioner's motion for summary judgment is granted; the conviction is vacated and petitioner is entitled to a new trial.
Counsel for the petitioner shall file a judgment consist3ent with this decision. *Page 1