NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3197-11T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MICHAEL NUNEZ,

    Defendant-Appellant.

---

**APPROVED FOR PUBLICATION**

**June 10, 2014**

**APPELLATE DIVISION**

---

Submitted April 29, 2014 — Decided June 10, 2014

Before Judges Fisher, Espinosa and Koblitz.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 10-06-01884.

Joseph E. Krakora, Public Defender, attorney for appellant (Lauren S. Michaels, Assistant Deputy Public Defender, of counsel and on the brief).

Warren W. Faulk, Camden County Prosecutor, attorney for respondent (Robin A. Hamett, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

KOBLITZ, J.A.D.

We reverse defendant's murder conviction because the trial judge permitted the State to bolster its case by calling defendant's investigator to testify to a prior consistent

statement of the State's only eyewitness in violation of defendant's right to counsel.

A jury convicted defendant Michael Nunez of first-degree murder, N.J.S.A. 2C:11-3(a)(1) or (2) (count one); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count two); second-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(b) (count three); third-degree endangering an injured victim, N.J.S.A. 2C:12-1.2(a) (count four); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b) (count five). He was sentenced to an aggregate term of seventy-three years in prison with an eighty-five percent term of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

In the early morning of December 13, 2009, Rashon Brown was found unconscious and later died of gunshot wounds. Two days later, Benjamin Searles, who was in jail on drug charges, gave a statement to police naming defendant as the shooter. On November 12, 2010, a week before pleading guilty to third-degree distribution of a controlled dangerous substance in a school zone, Searles was interviewed by defense investigator Harry Reubel. A year later, Searles testified to his version of the shooting at defendant's trial.

Searles testified that he went with defendant, Brown, and another man to a club around midnight and stayed for two or three hours drinking heavily. When they left the club, defendant drove the car. At approximately 4 or 5 a.m., they stopped in front of an apartment complex. Brown wanted to use his cellphone to look up some telephone numbers, but the battery was dead. Defendant tried to take Brown's phone to see if defendant's battery could be used. Searles testified that defendant became upset when Brown slapped defendant's hand away from the cellphone. Defendant and Brown then exited the car and, after a physical fight, defendant took a pistol from an area near the console of the car and shot Brown three times.

Later that morning, Searles was arrested for selling drugs. Two days later, after finding out that Brown had died, Searles asked to speak to the prosecutor. Searles ultimately pleaded guilty to third-degree drug distribution within a school zone and the prosecutor recommended a three-year sentence with an eighteen-month term of parole ineligibility. Searles had a substantial prior criminal record involving multiple drug convictions, and the charge carried a maximum of ten years in prison with a five-year parole disqualifier.

Defense counsel primarily attacked Searles's credibility by concentrating on the defense theory that Searles had fabricated

the story to obtain a favorable plea agreement. The State called the assistant prosecutor involved in Searles's plea agreement who testified that Searles's cooperation in defendant's murder case did not affect the terms offered by the State.

Defense counsel also pointed out inconsistencies between Searles's December 15, 2010 statement to the police and his testimony at trial. Over a defense objection, the judge allowed the State to call defendant's investigator to the stand. While reviewing his defense investigation report, which was marked for identification, long-time Public Defender Investigator[1] Reubel testified for the State in detail about what Searles told him in November 2010 when Reubel interviewed him in the jail as part of his defense investigation. Reubel's testimony confirmed that Searles had identified defendant, Reubel's own client, as the killer.

Another witness called by the State testified that he and two others had beaten defendant after defendant admitted shooting Brown. This witness did not tell the police about the purported confession until seventeen months after the shooting,

---

[1] Defense counsel brought out on cross-examination that Reubel did not work for counsel, but for the Public Defender's Office. Presumably in an effort to avoid a mistrial or later reversal, the State objected on the basis that it was prejudicial to defendant and the judge cautioned counsel.

A-3197-11T2

when he was facing drug charges. The State also called to the stand a jailhouse informant, Sampson, who testified that defendant had confessed the murder to him.

Defendant did not testify at trial, but the jury saw a videotaped statement he gave the police in which he stated that he was beaten because his attackers blamed him for Brown's murder. Defendant did not confess to the murder in this videotape.

On appeal defendant raises the following issues:

> POINT I: THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING CUMULATIVE AND UNDULY PREJUDICIAL HEARSAY TESTIMONY FROM THE DEFENSE INVESTIGATOR, WHICH IMPROPERLY BOLSTERED THE TESTIMONY OF THE STATE'S ONLY ALLEGED EYEWITNESS.

> POINT II: NUNEZ WAS DENIED A FAIR TRIAL WHEN THE PROSECUTOR IMPROPERLY VOUCHED FOR AND BOLSTERED JAILHOUSE-INFORMANT SAMPSON'S CREDIBILITY BY ELICITING TESTIMONY THAT HIS PLEA WAS CONDITIONED ON TRUTHFUL TESTIMONY AT TRIAL, TELLING THE JURY IN SUMMATION THAT SAMPSON FACED GRAVE CONSEQUENCES IF HE LIED, AND SUGGESTING THAT SAMPSON WAS CREDIBLE BECAUSE HE HAD PROVIDED FAR MORE INFORMATION THAN WAS REQUIRED TO SECURE A PLEA DEAL. (NOT RAISED BELOW)

> POINT III: IN THE FACE OF A POLICE INVESTIGATOR'S REPEATED REFERENCES TO HAVING OBTAINED NUNEZ'S PHOTOGRAPH FROM A DATABASE OF PEOPLE WHO HAD "BEEN THROUGH THE SYSTEM," THE JUDGE'S FAILURE TO PROVIDE A CURATIVE INSTRUCTION OR THE MODEL CHARGE ON POLICE PHOTOGRAPHS WAS PLAIN ERROR AND DENIED NUNEZ A FAIR TRIAL. (NOT RAISED BELOW)

POINT IV: THE CUMULATIVE EFFECT OF THE AFOREMENTIONED ERRORS DENIED NUNEZ A FAIR TRIAL.

POINT V: THE DEFENDANT'S SENTENCE OF 73 YEARS WITH 60 1/4 YEARS WITHOUT PAROLE IS EXCESSIVE.

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution both guarantee criminal defendants the "unfettered access and assistance" of counsel. State v. Scoles, 214 N.J. 236, 258 (2013). "That right clearly extends to the assistance of experts to aid in the accused's defense." Ibid. A thorough defense investigation is also part of the right to counsel. State v. Williams, 80 N.J. 472, 478-79 (1979).

The judge permitted the State to call Reubel to testify based on N.J.R.E. 803(a)(2), which provides that a witness's prior statement is admissible if it is "consistent with the witness'[s] testimony and is offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive[.]" The judge accepted the State's argument that, because the defense had attacked Searles's credibility by demonstrating inconsistencies between his first statement to police and his trial testimony, an allegation of recent fabrication existed justifying the introduction of a prior consistent statement. Reubel testified that Searles

implicated defendant as the shooter in the defense interview, consistent with Searles's trial testimony and Searles's jailhouse interview with law enforcement. Reubel shed no light on the purported differences between Searles's first statement to law enforcement and Searles's trial testimony.

Defendant argues that he did not allege recent fabrication, but rather that Searles gave a false statement seeking favorable treatment from the State for the charges pending against him. Searles thus already had the motivation to lie a week before he entered his guilty plea, when he spoke with Reubel. Thus, the primary defense attack on Searles's credibility was that he lied to obtain a better plea deal, not that he made up the story recently.

The State argues that even if there is no allegation of recent fabrication, a prior consistent statement may be admitted to rebut the allegation of a motive to lie, even if it was given after the motive arose. See State v. Muhammad, 359 N.J. Super. 361, 386-89 (App. Div.) (holding that N.J.R.E. 803(a)(2) does not in every circumstance require that a prior consistent statement be made before a motive to lie arose to be admissible, although "whether the statement was made before the asserted motive or influence to fabricate is a substantial factor in determining relevance"), certif. denied, 178 N.J. 36 (2003). In

the factual situation represented here, it is difficult to justify the admission of Searles's prior consistent statement, given after Searles had a reason to cooperate with the State for his own benefit.

We are compelled to reverse, however, not because a prior consistent statement may have been improperly introduced to bolster Searles's credibility. Rather, it is because that prior consistent statement came from a defense investigator, a part of the defense team whose job it was to interview the witness as an aid to defense counsel; a witness whom the State should not have been permitted to call.

We have held that it is reversible error for a court to order the defense to provide investigation notes to the State and then allow the State to call a defense investigator as a rebuttal witness to testify to prior consistent statements given by a child-victim. State v. Atkins, 405 N.J. Super. 392, 405-06 (App. Div. 2009). Unlike these circumstances, in Atkins we noted that other witnesses could have been called by the State to testify to the child's prior consistent statements. Ibid. Regardless of the availability of other witnesses to testify about a prior consistent statement, or the strength of the defense allegation of recent fabrication, the State's use of a defense investigator is error of constitutional proportion.

Defense counsel objected to the State calling the defense investigator on the basis that the prior consistent statement should not be admitted pursuant to counsel's reading of N.J.R.E. 803(a)(2), not because the State calling a defense investigator intruded into the attorney-client relationship or defendant's right to counsel. We thus review the judge's decision to allow the investigator to be called by the State pursuant to the plain error standard of review. R. 2:10-2; see State v. Nelson, 318 N.J. Super. 242, 249-50 (App. Div.) (citing to Rule 1:7-2 in determining that when defense counsel's trial objection is not stated in understandable legal terms, and, unlike this case, the issue is raised on appeal for different reasons, reversal should occur only if the plain error standard is met), certif. denied, 158 N.J. 687 (1999).

Generally, a party's failure to object to testimony at trial "may indicate that counsel perceived no prejudice." State v. Loyal, 386 N.J. Super. 162, 173-74 (App. Div.) (finding no prejudice in defense counsel's summation where the State did not object at trial), certif. denied, 188 N.J. 356 (2006). Here, however, defense counsel recognized the damage that the defense investigator could inflict. Counsel objected to the State calling Reubel at trial, although relying on the Rules of Evidence rather than defendant's right to counsel.

In 1978, our Supreme Court eloquently explained the violation of both the attorney-client privilege and right to counsel caused by allowing a part of the defense team to be used by the State. In commenting on the State's use of a defense handwriting expert not called by the defense, Justice Pashman stated:

> Reliance upon the confidentiality of an expert's advice itself is a crucial aspect of a defense attorney's ability to consult with and advise his client. If the confidentiality of that advice cannot be anticipated, the attorney might well forego seeking such assistance, to the consequent detriment of his client's cause. The protection from unwarranted disclosure we today mandate is an indispensable element of a criminal defendant's constitutional right to the effective assistance of counsel.
>
> [State v. Mingo, 77 N.J. 576, 587 (1978).]

In Mingo, the error was deemed harmless "in the unique circumstances of th[e] case" because the defendant admitted writing the note in question. Id. at 588. Relying on Mingo, we have held that the State's questioning of a defense expert about another defense expert's report, which was not used by the defense at trial, violates a defendant's constitutional right to counsel and furnishes an independent ground for reversal, even though not raised on appeal. State v. Spencer, 319 N.J. Super. 284, 300-01 (App. Div. 1999).

<u>Mingo</u> was confined to experts. <u>Mingo</u>, <u>supra</u>, 77 <u>N.J.</u> at 585. The Court later extended the holding in <u>Mingo</u> to other defense materials that a defendant does not intend to use at trial. <u>Williams</u>, <u>supra</u>, 80 <u>N.J.</u> at 480-81. In <u>Williams</u>, our Supreme Court determined the scope of the reciprocal discovery rule, <u>Rule</u> 3:13-3, as it relates to inculpatory defense material. The Court reversed a conviction, finding a violation of the right to counsel where the State used at trial defense attorney and defense investigator notes of the photographic identification of defendant made to them by the State's witness. <u>Id.</u> at 477-79. The Court said, "To hold otherwise would infringe on a defendant's constitutional right to the effective assistance of counsel because of the chilling effect it would have on defense investigation." <u>Id.</u> at 478. Reubel's investigation report detailing his interview with Searles was prepared exclusively for defendant, who had no intention of using it at trial.[2] Calling Reubel to testify relying on his report, rather than using the notes as occurred in <u>Williams</u>, did not absolve the State from its intrusion on defendant's rights.

---

[2] It is unclear from the record how the State became aware of Reubel's interview of Searles. Even if defense counsel gave Reubel's report to the State, the State could not call Reubel as a witness. <u>Mingo</u>, <u>supra</u>, 77 <u>N.J.</u> at 586.

The State's use at trial of inculpatory defense information violated defendant's right to effective assistance of counsel.

Having to risk the State's introduction of the results of a defense investigation unconstitutionally hampers the ability of defense counsel to render effective representation to clients. How can a defense attorney properly investigate defendant's case if the lawyer must be concerned with possible use of the investigator's work product to assist the State? When would defense counsel send an investigator to interview the State's witnesses if a consistent statement could be used by the State to bolster its case? "Defense counsel would be hesitant to make an in-depth investigation of the case for fear that inculpatory material would be disclosed which might have to be turned over to the State." Id. at 478-79. Just as defense reports not intended to be used at trial are not discoverable, id. at 481, neither is defense testimony available to the State. We accordingly hold that the testimony of a defense investigator not called by defendant is not available to the State.

The State's claim that the admission of Reubel's testimony at worst represents harmless error is unpersuasive. See State v. Macon, 57 N.J. 325, 340 (1971) ("[A] new trial shall be ordered if there is a reasonable doubt as to whether the constitutional error contributed to the verdict."); R. 2:10-2.

Analyzing this case under the plain error standard of review, we conclude that there is a reasonable doubt as to whether the admission of Reubel's testimony contributed to the verdict.

The impact of defendant's own investigator, whether hired by current defense counsel or by the Public Defender's Office, testifying on behalf of the State to enhance the credibility of the only eyewitness to the crime cannot be deemed harmless because Searles's credibility was crucial to the State's case. In light of our determination, we need not address the remaining issues raised by defendant. We do note that it was improper for a police investigator to testify that he obtained defendant's photo from a database of people who had "come through the system." See State v. Taplin, 230 N.J. Super. 95, 99-100 (App. Div. 1998) (reversing a theft conviction after the State introduced into evidence the defendant's "mug shots" because a jury could have inferred that the defendant had a prior criminal record from the photographs).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION