**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2805-15T1

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

MICHAEL A. DOTRO,

    Defendant-Respondent.

_____

Argued October 27, 2016 — Decided February 27, 2017

Before Judges Hoffman and O'Connor.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Indictment
No. 14-06-0755.

Nancy A. Hulett, Assistant Prosecutor,
argued the cause for appellant (Andrew C.
Carey, Middlesex County Prosecutor,
attorney; Russell J. Curley, Assistant
Prosecutor, and Ms. Hulett, of counsel and
on the brief).

Robert T. Norton argued the cause for
respondent.

PER CURIAM

The State, through the Middlesex County Prosecutor's Office (MCPO or State), challenges a July 20, 2015 Law Division decision allowing defendant Michael A. Dotro's expert to inspect a truck in the MCPO's possession out of the presence of the State.[1]  Finding the court exercised its sound discretion, we affirm the trial court's decision, but remand the matter to add certain provisions to the remedy the trial court ordered.

I

Following the investigation of an early morning fire at the home of Mark Anderko, a captain in the Edison Police Department, defendant Michael Dotro was indicted for second-degree aggravated arson, N.J.S.A. 2C:17-1(a); five counts of first-degree attempted murder, N.J.S.A. 2C:11-3(a)(1) and 2C:5-1; third-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1); third-degree unlawful possession of a destructive device, N.J.S.A. 2C:39-3(a); fourth-degree retaliation for past official action, N.J.S.A. 2C:27-5; and third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(a)(7).  Defendant's wife, Alycia Dotro, was also indicted for fourth-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(a)(7).

---

[1]  There is no written order.  The terms of the Law Division's decision are set forth on the last two pages of the July 20, 2015 written decision.

2

During its investigation, the MCPO discovered the following.  The fire started between 3:00 a.m. and 4:00 a.m.  At the site of the fire, the MCPO found two plastic, one-gallon jugs on Anderko's front porch.  The jugs smelled of gasoline, and the remnants of blue rags were found in each.  The investigators suspected the fire was started by igniting the rags, which served as wicks.  One jug had a QuickChek and the other a Pocono Springs label.  Also found at the scene were towels and hair samples.  Approximately one month before the fire, defendant, an officer in the Edison Police Department, was angry at Anderko for putting him on an undesirable shift as a form of discipline.

During the execution of a search warrant of defendant's home, the MCPO found blue rags and towels similar to those found at the crime scene, a five-gallon jug containing approximately two-and-a-half gallons of gasoline, and empty one-gallon water jugs smelling of gasoline.  One of these empty jugs had a Pocono Springs label on it; another was not labeled but was determined to have come from QuickChek.  A QuickChek label was found in a wastebasket in defendant's home.  Some of the towels recovered from the crime scene were surgical towels, which matched those used by a surgical center where defendant's wife worked.  Located under the front seat of defendant's 2001 Dodge Ram

3

pickup truck was a blue rag similar to those found at the crime scene; the rag smelled of gasoline.

Review of a QuickChek surveillance video near Anderko's home showed, minutes before the fire erupted at his home, a dark-colored pickup truck made a right turn out of the QuickChek parking lot and headed in the direction of Anderko's residence. In order to get to defendant's home, one would make a left turn out of the parking lot. The video further revealed a dark-colored truck drive by the QuickChek in the opposite direction toward defendant's home fifteen minutes later. Investigators timed the drive from the QuickChek to Anderko's home and back again to the QuickChek, pausing one minute at Anderko's home, the estimated time the perpetrator expended to place and ignite the rags in the two jugs. The round trip took fifteen minutes and thirty-three seconds.

Some of the evidence uncovered by the MCPO tended to favor defendant or diminished the significance of the State's evidence. Of the two hair samples recovered at the crime scene, one was lost and the other did not match defendant's hair. A fingerprint recovered from one of the jugs found at Anderko's home did not belong to defendant. Defendant kept gasoline at his home to power his snow blower and generator, providing a reason he stored gasoline in his home. One taking the most

4

direct route from Anderko's to defendant's home would not pass by the QuickChek.

After viewing the QuickChek surveillance video, defendant filed a motion to permit him and his expert to examine defendant's truck, which remains in the possession of the MCPO, out of the presence of law enforcement personnel. The State objected, arguing a representative from the MCPO needed to be present, so the State could account for the truck's chain of custody and protect the integrity of the evidence.

In support of his motion, defendant submitted a letter to the trial court, ex parte, explaining his reasons for examining the truck out of the presence of the MCPO staff. After reviewing that letter, the trial court determined permitting any representative of the MCPO to be present during defendant's examination would compromise defendant's ability to prepare a defense.

Specifically, the court found a MCPO representative would be able to discern from defendant's expert's examination the "nature of [defendant's] defense." Therefore, the presence of a MCPO representative would impermissibly inhibit defendant from preparing a defense. The court also took into consideration defendant consented to waive any claim the chain of custody was interrupted or compromised, and further agreed to videotape the

5

entire examination so there would be a record available to the State if it found or suspected the truck had been altered during his examination. After weighing the competing interests of the parties, the court found defendant's need to prepare a defense outweighed the State's concerns about the interruption in the chain of custody, and granted defendant's motion. However, the court imposed the following conditions:

> 1. The truck will be transferred to a location designated by the defense for the inspection to take place. Notice shall be provided to the MCPO no less than three weeks prior to the selected date for inspection. The court will be notified of the inspection location, date, and time.
>
> 2. Members and representatives of the MCPO will not be permitted to be present at the time of the defense's inspection.
>
> 3. Two retired Superior Court Judges are to be present to proctor the inspection of the truck. The defense provided a list of five retired Superior Court Judges. The MCPO was to select two of the judges to oversee the inspection. At a hearing to discuss this issue, the representatives of the MCPO, on the record, challenged the probity and rectitude of the retired judges. Since the Prosecutor's Office is not inclined to make the selection, the Court will do so and order the Honorable William Wertheimer and the Honorable William Drier to be present throughout the entirety of the inspection and they shall be authorized to stop the inspection and report to the Court any violation of this Court's Order with respect to the nature and scope of the inspection.

6

The cost for these judicial proctors shall be borne by the defense.

4. The entire inspection shall be continuously videotaped. The defense shall hire someone to be present to videotape the entire proceeding from the arrival of the truck to the selected location until its departure. The entire cost shall be borne by the defense. The following shall be submitted to the Court and made a part of the Court record: (1) the recording and (2) the name, address and telephone number of the individual who created the recording. The two judicial proctors shall insure that this portion of this Order shall be complied with.

5. Dotro, defense counsel, and all necessary members of the defense team are permitted to be present during the inspection. The identities of all individuals present during the inspection shall be provided to the Court no later than three days before inspection.

6. This Order shall be stayed for ten days from today's date to allow the Prosecutor to file its appeal.

In a footnote, the court further ordered:

Prior to any inspection, Dotro will be required to place his waiver [to any claim to the truck's chain of custody], under oath, on the record. Unless it is completely unequivocal, no inspection shall take place. Also, any waiver given by Dotro will become law of the case and binding on any successor attorney.

7

A-2805-15T1

On appeal, the State raises the following point for our consideration:

> THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING THE STATE TO BE ABSENT DURING DEFENDANT'S INSPECTION OF TANGIBLE EVIDENCE IN THE STATE'S CONTROL AND BY APPOINTING TWO RETIRED JUDGES TO STAND IN AS "JUDICIAL PROCTORS" DURING THE INSPECTION.

In its brief, the State raises the same arguments it did before the trial court. It also claims "the safeguards to protect defendant's constitutional rights to pursue defenses[,]" would not be jeopardized by the State's presence during the examination. The State does not identify the safeguards to which it is referring, other than to note it would position its representative during the examination to preclude him or her from hearing any discussions between defendant's counsel and his expert.

Defendant notes he does not know whether the examination of the truck will provide exculpatory or inculpatory evidence. As he argued before the trial court, a representative of the State cannot be present because he or she will be able to intuit from what the expert examines what defendant seeks to learn from the inspection. If a representative is present, defendant will have to choose between foregoing discovery that may uncover

8

exonerating evidence or risk providing the State with incriminating evidence.

Defendant maintains videotaping the expert's examination of the truck will adequately protect the State's chain of custody concerns and preserve the integrity of the truck. Once the examination is over, the videotape will be given to one of the judges for delivery to the court. In the event the State detects or suspects the truck was compromised during the examination, the State will have the option of making an application to the court to view the tape. Defendant also notes both he and defense counsel waived any objection to the chain of custody on the record.

"We accord substantial deference to a trial court's issuance of a discovery order and will not interfere with such an order absent an abuse of discretion." State v. Hernandez, 225 N.J. 451, 461 (2016) (citing State ex rel. A.B., 219 N.J. 542, 554 (2014)). An appellate court should "defer to a trial court's resolution of a discovery matter, provided its determination is not so wide of the mark or is not 'based on a mistaken understanding of the applicable law.'" A.B., supra, 219 N.J. at 554. However, a trial court's interpretations of the law are subject to de novo review. See ibid.; In re Custodian of Records, Criminal Div. Manager, 214 N.J. 147, 163

9

(2013) (citing <u>Manalapan Realty, L.P. v. Twp. Comm.</u>, 140 <u>N.J.</u> 366, 378 (1995)).

Criminal defendants are entitled to broad discovery. <u>State v. Scoles</u>, 214 <u>N.J.</u> 236, 252 (2013). "To advance the goal of providing fair and just criminal trials, we have adopted an open-file approach to pretrial discovery in criminal matters," and our court rules implement that approach. <u>Ibid.</u> Courts also have the power to order discovery when justice requires. <u>State ex rel W.C.</u>, 85 <u>N.J.</u> 218, 221 (1981). "Whether discovery should be expanded involves exercising judicial discretion or, put another way, balancing the beneficial effects of discovery against its disadvantages." <u>Id.</u> at 224.

"The right to counsel afforded criminal defendants by the Sixth Amendment of the United States Constitution and by Art. I, par. 10 of the New Jersey Constitution comprehends the right to the effective assistance of counsel." <u>State v. Mingo</u>, 77 <u>N.J.</u> 576, 581 (1978). The right to effective assistance of counsel "includes the right to conduct a reasonable investigation to prepare a defense" in a criminal proceeding, <u>A.B.</u>, <u>supra</u>, 219 <u>N.J.</u> at 547, including the right "to the assistance of experts to aid in the accused's defense." <u>Scoles</u>, <u>supra</u>, 214 <u>N.J.</u> at 258.

While engaged in his or her investigation, defense counsel must "be permitted full investigative latitude in developing a meritorious defense on his client's behalf." Mingo, supra, 77 N.J. at 576. Investigative latitude would be circumscribed if, in order to conduct such discovery, defense counsel had to risk revealing to the State potentially injurious information to defendant's position and information defendant does not intend to use at trial. Id. at 582; see also State v. Nunez, 436 N.J. Super. 70, 78 (App. Div. 2014) (observing "[h]aving to risk the State's introduction of the results of a defense investigation unconstitutionally hampers the ability of defense counsel to render effective representation to clients.").

Here, the trial court properly considered the State's and defendant's competing concerns. After weighing these opposing positions, the trial court reasonably determined defendant's need to examine the truck out of the presence of a MCPO representative trumped the State's concerns. Nevertheless, the trial court ordered measures to protect the State's evidence.

Although we remand to include additional conditions to govern the examination, the conditions ordered by the trial court are otherwise adequate and appropriate. They address the State's concerns about safeguarding the evidence, yet provide a

11

mechanism for defendant to examine evidence while sheltering him from providing inculpatory evidence to the State.

We conclude the State's remaining arguments are without sufficient merit to warrant discussion in a written opinion, see R. 2:11-3(e)(2), and note the case law upon which the State relies to support its position is distinguishable from the facts in this case and, thus, inapposite.

Finally, we remand this matter to the trial court to include the following additional conditions for defendant to examine the truck. The videographer shall keep the camera on the expert's hands, which shall be in view at all times, and the recording shall be clear enough to discern what he does to the truck. In addition, because the camera will be focused on the expert's hands, another camera or cameras shall be pointed at the rest of the truck so any activity at or near other parts of the truck will be recorded during the entire examination. The judges shall ensure all recordings shall be delivered to the court.

Affirmed in part and remanded in part in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-2805-15T1