SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. Isaiah J. Knight (A-39-22) (087822)**

**Argued October 10, 2023 -- Decided March 5, 2024**

**PIERRE-LOUIS, J., writing for a unanimous Court.**

In this appeal, the Court considers whether, pursuant to New Jersey discovery rules, the State can obtain from defense counsel an affidavit that constitutes physical evidence of a crime.

On June 1, 2021, Tyzier White was fatally shot as he stood outside of the Neptune Lounge, a bar in Newark. Two men, known by their nicknames as "Zay" and "DJ Neptune," witnessed the shooting. Both men provided sworn statements in which they identified the shooter, and both later selected defendant Isaiah Knight's photograph from a photo array. On June 16, law enforcement arrested defendant.

On December 21, 2021, Zay gave a statement to law enforcement, claiming that a woman he met online took him to a residence in Newark. At some point after arriving at the residence and spending time with the woman, three individuals, including two masked men armed with guns, entered the room where Zay was. Zay stated that he was given a written affidavit and told to copy it. The affidavit recanted Zay's original statement to law enforcement identifying defendant as the shooter. After Zay copied the recanting affidavit, the captors released him. Defendant's sister and cousin were identified as two of the perpetrators and charged with witness tampering. A superseding indictment also charged defendant with second-degree conspiracy to commit witness tampering and two counts of second-degree kidnapping.

On April 4, 2022, the State filed a motion to compel discovery of the document Zay was allegedly forced to write, believing that defendant's alleged co-conspirators turned it over to his counsel. The State's certification in support of its motion to compel further alleged that DJ Neptune may have been forced to transcribe a similar recantation and that defense counsel might possess that document as well. The trial court granted the State's motion to compel discovery, and the Appellate Division affirmed the trial court's order. The Court granted leave to appeal. 253 N.J. 546 (2023).

1

**HELD:** The sought-after affidavit is physical evidence of the crimes of witness tampering and kidnapping for which defendant and others have been charged. It is therefore subject to reciprocal discovery under Rule 3:3-13(b)(2)(B) and (D).

1. Rule 3:13-3 codifies New Jersey's open-file approach to pretrial discovery in criminal matters post-indictment. Although a defendant has a right to automatic and broad discovery of the evidence the State has gathered in support of its charges upon the issuance of an indictment, the Rule also places the onus on defense counsel to supply the prosecution with broad categories of items. This is often referred to as the "reciprocal discovery" rule or process. Under Rule 3:13-3(b)(2)(B) and (D), respectively, a defendant must provide the State with materials including "any relevant books, papers, [or] documents, including "writings," that are "within the possession, custody or control of defense counsel," as well as with "written statements, if any, . . . made by any witnesses whom the State may call as a witness at trial." Significantly, the Rule "does not require discovery of a party's work product consisting of internal reports, memoranda or documents made by that party or the party's attorney or agents, in connection with the investigation, prosecution or defense of the matter." R. 3:13-3(d) (emphases added). (pp. 13-15)

2. Beyond the Rule's own exception, constitutional guarantees may bar compelling disclosure of certain materials in certain situations. The right against self-incrimination applies when the accused is compelled to make a testimonial communication that is incriminating. However, both the state and Fifth Amendment privileges against self-incrimination are personal to the defendant and cannot be asserted by or on behalf of third parties. The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution ensure the criminally accused the right to effective assistance of counsel, which includes the right to a thorough defense investigation. In State v. Mingo, the Court held that defense counsel cannot be compelled, via discovery, to give the State inculpatory expert materials it generated in preparation for trial unless the defense intends to introduce or use that expert evidence at trial, noting that such a rule furthers the right to effective assistance of counsel because defense counsel will not be deterred from "seek[ing] out expert evidence" to aid its defense that may turn out to be unfavorable. 77 N.J. 576, 582, 584 (1978). And one year after the Mingo decision, the Court expanded its holding to include statements or summaries of statements made by a State witness to defense counsel when the defense does not intend to use the statements at trial. State v. Williams, 80 N.J. 472, 480-82 (1979). The Court noted that "[i]t is abhorrent to our concept of criminal justice to compel a defendant, under the guise of reciprocal discovery, to disclose to the State inculpatory evidence uncovered by defense counsel during his preparation for trial and then allow the State to use that evidence as part of its case in chief." Id. at 479. (pp. 15-21)

3.  In this matter, neither party disputes that defense counsel played no role whatsoever in the genesis of Zay's affidavit.  The affidavit's creation was allegedly the result of a kidnapping and witness intimidation plot for which defendant and two other individuals have been criminally charged.  The affidavit, therefore, is physical evidence of a crime and does not fall within the exception to the discovery obligations set forth in Rule 3:13-3(d).  Rather, the affidavit is a relevant writing potentially in defense counsel's possession pursuant to Rule 3:13-3(b)(2)(B).  The affidavit would also fall under Rule 3:13-3(b)(2)(D) as a written statement by a witness that the State intends to call at trial.  Compelling defense counsel to turn over in discovery an item in his possession that is physical evidence of a crime does not trigger the same Sixth Amendment concerns found in Williams and Mingo.  Further, because the discovery request here is directed to counsel, not defendant, and pertains to materials allegedly provided by others, defendant's Fifth Amendment right -- a right personal to defendant that cannot be asserted by or on behalf of third parties -- is inapplicable here.  The unique facts of this case lead to the conclusion that the affidavits, as physical evidence of a crime, fall within the discovery rules, and no constitutional privilege stands in the way of their production.  The State can appropriately lay a foundation for the admission of the documents at trial by sanitizing the manner in which it came into possession of the documents without stating that the affidavits came from defense counsel.  (pp. 21-24)

**AFFIRMED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE PIERRE-LOUIS's opinion.**

3

SUPREME COURT OF NEW JERSEY

A-39 September Term 2022

087822

State of New Jersey,

Plaintiff-Respondent,

v.

Isaiah J. Knight,

Defendant-Appellant.

On appeal from the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| October 10, 2023 | March 5, 2024 |

Brian P. Keenan, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Brian P. Keenan, of counsel and on the briefs).

Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney; Matthew E. Hanley, of counsel and on the briefs).

William P. Cooper-Daub, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; William P. Cooper-Daub, of counsel and on the brief).

1

Claude Caroline Heffron argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; CJ Griffin, on the brief).

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

This appeal asks us to determine whether, pursuant to our discovery rules, the State can obtain from defense counsel an affidavit that constitutes physical evidence of a crime.

Defendant Isaiah J. Knight was charged with murder.[1] A witness to the murder gave a statement to police and identified defendant as the shooter. Thereafter, the witness met a woman online, and the woman took him to a residence in Newark. At some point after arriving at the residence and spending time with the woman in a room, three individuals, including two masked men armed with guns, entered the room. The witness stated that he was given a written affidavit and told to copy it. The affidavit recanted the witness's original statement to law enforcement identifying defendant as the shooter. After the witness copied the recanting affidavit, the captors released him, and he then gave a statement to law enforcement regarding the ordeal.

---

[1] We derive the facts throughout this opinion from the pretrial record.

2

Defendant's sister and cousin were identified as two of the perpetrators and charged with witness tampering.

The State, operating under the belief that the recantation affidavit was given to defendant's attorney, moved to compel discovery of the affidavit from defense counsel. Defendant objected, but the trial court granted the State's motion to compel. Defendant appealed, claiming that defense counsel cannot be compelled to turn over the affidavit pursuant to this Court's precedent and constitutional privileges in the Fifth and Sixth Amendments. The Appellate Division disagreed and affirmed.

We granted defendant's motion for leave to appeal and now affirm. The sought-after affidavit is physical evidence of the crimes of witness tampering and kidnapping for which defendant and others have been charged. As such, the affidavit is subject to reciprocal discovery under Rule 3:3-13(b)(2)(B) and (D).

## I.

### A.

On June 1, 2021, Tyzier White was fatally shot as he stood outside of the Neptune Lounge, a bar in Newark. Two men, known by their nicknames as

3

"Zay" and "DJ Neptune," witnessed the shooting.[2] Both men provided sworn statements in which they identified the shooter as a man known to them by the nickname "B.A." Zay added that he knew B.A.'s real name was Isaiah Knight because Zay and defendant have the same name. Both Zay and DJ Neptune later selected defendant's photograph from a photo array.

According to Zay, after the shooting, defendant threatened him and another man, David Chappel, at gunpoint and forced them to drive defendant to his car, a BMW, in Chappel's Chevrolet Malibu. Zay explained that upon reaching the BMW, defendant directed Zay to drive defendant's BMW while Chappel and defendant followed in the Malibu. Video footage shows defendant entering Chappel's Malibu, Zay entering the BMW, and the cars driving off in tandem. When defendant subsequently exited the Malibu to retrieve his BMW, he allegedly told Zay, "Yo, tell your man I got his license plate, you don't play with me." In the days following the murder, defendant allegedly called other witnesses present at the Neptune Lounge at the time of the murder in an effort to intimidate them.

---

[2] Zay's legal name is Isaiah V. Knight. Zay is not related to defendant. We refer to him by his nickname to avoid confusion with defendant. The record does not reflect DJ Neptune's legal name. We do not intend any disrespect by referring to these individuals by their nicknames.

On June 16, 2021, law enforcement arrested defendant on murder charges. He has been detained pending trial since September 2021.

On December 21, 2021, Zay claimed that a woman he knew as "Aminah" from prior interactions contacted him on Instagram wanting to meet up. According to Zay, Aminah picked him up and drove him to 145 Hobson Street in Newark, where an unknown woman let them into the multi-family residence. Zay stated that once inside a bedroom on the second floor, he and Aminah smoked marijuana. Zay recalled that at some point Aminah grabbed her coat and a lighter and said she wanted to go outside to smoke a cigarette. When she opened the door and left the room, however, the unknown woman who had let them in, along with two masked men armed with guns, entered the bedroom.

Zay recalled that the men mentioned a "discovery packet." Then, Zay claims the woman handed him a written document and instructed him to copy it by hand onto another sheet of paper. The document was a written "affidavit," the substance of which recanted Zay's prior sworn statement to police identifying defendant as the shooter. According to Zay, the affidavit stated that he had lied in his previous sworn statement under duress from detectives and that no one should try to find him. Zay stated that as he began to write the words, "I, Isaiah Knight," the woman said, "No, not his name."

5

According to Zay, the men became enraged because they thought he was trying to be funny by signing defendant's name as opposed to his own. Zay alleged that the woman then snatched his phone, confirmed his name, and deleted all Instagram messages between him and Aminah. At one point, Zay said he recognized one of the men, and the man acknowledged Zay's identification by removing his mask.

Zay recalled that as he continued to copy the text of the affidavit, the men told him that they were going to kill him and leave him in the apartment as soon as he finished signing. But while looking through Zay's phone, the woman noticed that Zay had texted a friend about being at 145 Hobson Street. Given Zay's text message to his friend about his whereabouts, Zay overheard the woman and two men discuss whether the friend would link Zay's death to the address if they killed him. As a result, the perpetrators released Zay.

The following day, Zay went to the Essex County Prosecutor's Office Homicide Task Force and gave a second sworn statement describing the prior evening's events. He also provided law enforcement with Instagram pictures of Aminah and the man he recognized. Law enforcement subsequently identified Aminah as Aminah Anderson, defendant's sister, and the man as Sylvester Richardson, defendant's cousin.

Zay gave a third statement to law enforcement in which he identified both Anderson and Richardson as two of the assailants from the December 21, 2021 incident. He also revealed a text message that he received dated March 21, 2022, threatening his parents by referencing his mother's address and his father's place of employment.

In April 2022, law enforcement arrested Anderson and Richardson on witness tampering charges. In his statement to law enforcement, Richardson admitted that he is defendant's cousin and that Anderson is defendant's sister.

B.

On September 10, 2021, an Essex County grand jury indicted defendant for the following offenses: first-degree murder, second-degree unlawful possession of a weapon, and second-degree possession of a weapon for an unlawful purpose. On March 16, 2022, an Essex County grand jury returned a superseding indictment against defendant which included the following additional offenses: second-degree conspiracy to commit witness tampering and two counts of second-degree kidnapping.

On April 4, 2022, the State filed a motion to compel discovery of the document Zay was allegedly forced to write, believing that defendant's alleged co-conspirators turned it over to his counsel. The State's certification in support of its motion to compel further alleged that DJ Neptune may have been

7

forced to transcribe a similar recantation and that defense counsel might possess that document as well.[3]

The trial court held a hearing on the State's motion to compel discovery. In opposing the motion, defendant relied on State v. Williams, 80 N.J. 472 (1979), to argue that the State was not entitled to the affidavits under Rule 3:13-3(b)(2) because he did not intend to use the affidavits at trial. The State argued that defense counsel had to turn over the affidavits because they are evidence of a crime and not privileged attorney work product.

The trial court granted the State's motion to compel discovery. The court distinguished Williams, finding that the item at issue in that case was work product formulated by defense counsel based on witness interviews. Here, the court reasoned that the affidavits are "evidence of the crime of witness tampering, and not anything formulated or written based on defense's own investigation or work product."

The Appellate Division granted defendant's motion for leave to appeal the trial court's order. In an unpublished opinion, the Appellate Division affirmed the trial court's order compelling disclosure of the affidavits. The court concluded that Zay's and DJ Neptune's written statements, potentially

---

[3] Defense counsel has neither confirmed nor denied possessing either of these documents or their existence to his knowledge.

held by defense counsel, fall under the rubric of <u>Rule</u> 3:13-3(b)(2)(D) because the State intends to call them both as witnesses at trial. The court noted that this case bore no resemblance to <u>Williams</u> because <u>Williams</u> involved a defense attorney and his investigator interviewing the State's witness. In this case, the Appellate Division explained, "[n]o one suggests defense counsel . . . had prior knowledge of, much less countenanced or actively participated in, the alleged kidnapping incident." The court concluded that the statements were "the product of the alleged kidnapping and witness tampering activity undertaken by defendant's relatives outside his presence," as opposed to attorney work product.

The Appellate Division further rejected defendant's arguments that disclosure would violate his Sixth Amendment rights. Because the court found <u>Williams</u> inapplicable, it also found the Sixth Amendment concerns noted by this Court in <u>Williams</u> irrelevant. The Appellate Division observed that a decision compelling disclosure in this case would not chill defense counsel from conducting investigations given the way the statements in this case came to be.

We granted defendant's motion for leave to appeal. 253 N.J. 546 (2023). We also granted motions by the Attorney General and the Association

9

of Criminal Defense Lawyers of New Jersey (ACDL) to appear as amici curiae.

## II.

## A.

Defendant urges this Court to reaffirm the longstanding rule that a defendant must only disclose materials the defense intends to use or rely on at trial. Defendant argues that, even if he or his counsel possess the affidavits, the reciprocal discovery rule does not apply and he should not be required to turn them over because he does not intend to use them at trial. Defendant claims that compelled production violates his Sixth Amendment right to effective assistance of counsel because, if he gave the affidavit to defense counsel to seek legal advice, the communication is privileged. Thus, defendant contends, compelled production produces a conflict of interest between him and defense counsel that would sever the attorney-client relationship and undermine his right to effective assistance of counsel. Alternatively, defendant argues that the State could have sought a search warrant or subpoena duces tecum to acquire the alleged affidavits, as opposed to improperly using the discovery rules to do so.

Defendant also claims that compelled production of the affidavits would violate his Fifth Amendment right against self-incrimination. Defendant

10

asserts that because the discovery order is purportedly directed at him, the act of production would compel him to admit to possessing incriminating materials and thereby violate his right against self-incrimination.

The ACDL supports defendant's position that the Court should not allow the State to infringe upon the attorney-client relationship and a defendant's Sixth Amendment rights as a matter of routine via the discovery rules. The ACDL submits that compelling disclosure will chill defense attorneys from conducting thorough investigations out of fear of generating inculpatory evidence that must be disclosed. Accordingly, the ACDL contends that this chilling effect will interfere with and hamper defense attorneys' ability to render effective assistance.

### B.

The State argues that this Court should uphold the trial court and Appellate Division's decisions. According to the State, Rule 3:13-3(b)(2)'s plain language requires producing the affidavit in question because the State has clearly stated its intention to call Zay at trial. Regarding defendant's constitutional arguments, the State contends that requiring defendant to produce the affidavits does not violate his Fifth Amendment right against self-incrimination because the affidavits do not contain statements that defendant made and because neither defendant nor defense counsel prepared the

11

documents. Alternatively, even if production is testimonial, the State contends that the foregone conclusion exception applies to compel disclosure.

The State further argues that compelling production does not violate defendant's Sixth Amendment right to effective assistance of counsel. The State asserts that the attorney-client privilege is not implicated because defense counsel simply possesses the affidavits after likely having received the documents from a co-defendant or a third party, as opposed to having prepared the documents in anticipation of trial. Given that defense counsel did not prepare or assist in preparing the affidavits, the State contends that Williams is inapplicable.

The Attorney General echoes the State's arguments regarding Rule 3:13-3(b)'s plain language and the alleged violations of defendant's constitutional rights and asks this Court to affirm the Appellate Division's judgment. The Attorney General adds that requiring the State to obtain search warrants in these scenarios would risk a much greater intrusion into materials shielded by the attorney-client privilege and confidentiality.

III.

A.

Our scope of review in this matter is limited. State v. Brown, 236 N.J. 497, 521 (2019). "[A]ppellate courts 'generally defer to a trial court's

12

disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law.'" Ibid. (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). Under the abuse of discretion standard, we "generously sustain [the trial court's] decision, provided it is supported by credible evidence in the record." Id. at 522 (alteration in original) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384 (2010)).

This Court "need not defer, however, to a discovery order that is well 'wide of the mark,' or 'based on a mistaken understanding of the applicable law.'" State v. Hernandez, 225 N.J. 451, 461 (2016) (first quoting State in Int. of A.B., 219 N.J. 542, 554 (2014); and then quoting Pomerantz, 207 N.J. at 371)). We review a court rule's meaning or scope de novo, affording "no deference to the interpretative statements of the trial court and Appellate Division, unless they are persuasive in their reasoning." Ibid.

B.

As noted, defendant asserts that the affidavits are not subject to disclosure under our discovery rules and that, even if they were, the Fifth and Sixth Amendments would prevent their disclosure.

Rule 3:13-3 outlines the pretrial discovery process and procedure in criminal matters. State v. Scoles, 214 N.J. 236, 252 (2013). The Rule codifies

New Jersey's open-file approach to pretrial discovery in criminal matters post-indictment. State v. Ramirez, 252 N.J. 277, 295 (2022). The purpose behind the open-file approach is "[t]o advance the goal of providing fair and just criminal trials" and "the quest for truth." Scoles, 214 N.J. at 252.

Although "a defendant has a right to automatic and broad discovery of the evidence the State has gathered in support of its charges" upon the issuance of an indictment, the Rule also places the onus on defense counsel to supply the prosecution with broad categories of items. Id. at 252-53; see also Ramirez, 252 N.J. at 295-96; R. 3:13-3(b)(2). This is often referred to as the "reciprocal discovery" rule or process. See, e.g., State v. Tier, 228 N.J. 555, 557 (2017); Williams, 80 N.J. at 478. The thrust behind the "reciprocal discovery" rule is "that the State is entitled to know in advance what evidence a defendant intends to use at trial so that it may have a fair opportunity to investigate the veracity of such proof." Williams, 80 N.J. at 478.

With regard to the defendant's discovery obligations, Rule 3:13-3 provides, as relevant here, that a defendant must provide the State with "all relevant material, including, but not limited to,"

> (B) any relevant books, papers, documents or tangible objects, buildings or places or copies thereof, which are within the possession, custody or control of defense counsel, including, but not limited to, writings, drawings, graphs, charts, photographs, video and sound recordings, images, electronically stored information,

14

and any other data or data compilations stored in any medium from which information can be obtained and translated, if necessary, into reasonably usable form;

. . .

(D) written statements, if any, including any memoranda reporting or summarizing the oral statements, made by any witnesses whom the State may call as a witness at trial. . . .

[R. 3:13-3(b)(2)(B), (D).]

Significantly, the Rule "does not require discovery of a party's work product consisting of internal reports, memoranda or documents made by that party or the party's attorney or agents, in connection with the investigation, prosecution or defense of the matter." R. 3:13-3(d) (emphases added).

Beyond the Rule's own exception, constitutional guarantees may bar compelling disclosure of certain materials in certain situations.

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Our State Constitution does not contain a parallel provision to the Fifth Amendment right against self-incrimination, but the privilege is firmly established in this state's common law and is codified in statute and in the Rules of Evidence. See N.J.S.A. 2A:84A-19; N.J.R.E. 503. The right against self-incrimination "applies only when the accused is compelled to

15

make a testimonial communication that is incriminating." Fisher v. United States, 425 U.S. 391, 408 (1976) (emphasis added).

Both the state and federal privileges against self-incrimination are personal to the defendant and cannot be asserted by or on behalf of third parties. See State v. Baum, 199 N.J. 407, 419 (2009); Fisher, 425 U.S. at 410. Our Court has recognized that "a fundamental policy limiting the scope of the privilege" is that "the Fifth Amendment privilege is a purely personal one." Baum, 199 N.J. at 417 (quoting Bellis v. United States, 417 U.S. 85, 90 (1974)).

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution ensure the criminally accused the right to effective assistance of counsel. See State v. Fritz, 105 N.J. 42, 58 (1987) (holding that, in keeping with the federal standard, "a criminal defendant is entitled to the assistance of reasonably competent counsel" under Article I, Paragraph 10 of the State Constitution). In representing a criminal defendant, defense counsel has a "duty to make reasonable investigations." State v. Chew, 179 N.J. 186, 217 (2004). "The right to a 'thorough defense investigation is also part of the right to counsel.'" State v. Martinez, 461 N.J. Super. 249, 276-77 (App. Div. 2019) (quoting State v. Nunez, 436 N.J. Super. 70, 74-75 (App. Div. 2014)). That includes providing the defendant with the

"necessary tools, such as investigative support and expert analysis, that he needs to carry on his defense." State v. Melvins, 155 N.J. Super. 316, 320 (App. Div. 1978).

C.

Defendant relies on two cases in which this Court found that a defendant's constitutional protections limited discovery obligations.

This Court has recognized that "[t]o safeguard the defense attorney's ability to provide the effective assistance guaranteed by these constitutional provisions, it is essential that he be permitted full investigative latitude in developing a meritorious defense on his client's behalf." State v. Mingo, 77 N.J. 576, 582 (1978). Such latitude to conduct an investigation would be constrained if defense counsel "must risk a potentially crippling revelation to the State of information discovered in the course of investigation which he chooses not to use at trial." Ibid.

In Mingo, this Court considered how the principles underlying the reciprocal discovery rule relate to the attorney work product privilege and the right to effective assistance of counsel. 77 N.J. at 587. In that case, defense counsel sought to compel the State's production of a note allegedly written by the assailant. Id. at 579. Defense counsel wanted to engage a handwriting expert to examine the note and compare the handwriting to defendant's

17

handwriting.  Ibid.  The trial court granted defense counsel's request, conditioned "on defense counsel's agreeing to furnish the prosecutor with a copy of any" expert report generated, regardless of whether defendant planned to use the report at trial.  Ibid.  After comparing defendant's handwriting exemplars to the note, the defense expert concluded that the same person had written all the documents.  Id. at 580.  As a result of the expert report's inculpatory nature, defense counsel decided to forego using the expert's report at trial.  Ibid.  The State, however, having received the report from defense counsel, subpoenaed the expert to testify on the State's behalf, and the expert did so.  Ibid.

In considering whether the trial court should have admitted the expert's testimony, this Court held that defense counsel cannot be compelled, via discovery, to give the State inculpatory expert materials it generated in preparation for trial unless the defense intends to introduce or use that expert evidence at trial.  Id. at 582, 584.  We held that such a rule furthers the Sixth Amendment right to effective assistance of counsel because defense counsel will not be deterred from "seek[ing] out expert evidence" to aid its defense that may turn out to be unfavorable.  Id. at 582.  This Court further explained that "[t]he protection from unwarranted disclosure we today mandate is an

18

indispensable element of a criminal defendant's constitutional right to the effective assistance of counsel." Id. at 587.

Although an attorney's work product privilege is "closely analogous" to the right of effective assistance of counsel, the Court rejected the argument that the expert report at issue was work product. Id. at 585. The Court reasoned that the expert's report "constitute[d] a species of evidence admissible under some circumstances whereas true work product is inherently inadmissible." Ibid.

One year after the Mingo decision, the Court expanded its holding to include statements or summaries of statements made by a State witness to defense counsel when the defense does not intend to use the statements at trial. Williams, 80 N.J. at 480-82. In Williams, defense counsel and his investigator interviewed the victim on two occasions. Id. at 476. During the second interview, the victim selected defendant's picture in identifying him as the perpetrator. Ibid. That was the only time the victim identified the defendant as the assailant, and identification was at issue in the State's case. Id. at 477, 479-80.

The State moved for reciprocal discovery of the photographs and interview memoranda. Id. at 476. Defendant objected because he did not intend to introduce any of those materials at trial. Ibid. The trial court granted

the State's motion and ordered defendant, pursuant to Rule 3:13-3's reciprocal discovery provisions, to turn over the defense's victim interview memoranda as well as the photographs shown to the victim during the interview. Ibid.

After reviewing the materials, the State served subpoenas on counsel and his investigator to testify as the State's witnesses during trial. Ibid. To avoid testifying, defense counsel stipulated to his interview with the victim. Ibid. During summation, the prosecutor emphasized that the victim's sole identification occurred when defendant's own attorney showed her a picture of the defendant. Id. at 477.

The Court concluded that the trial court's order compelling reciprocal discovery of inculpatory material in defense counsel's file trespassed on the defendant's right to effective assistance of counsel. Ibid. The Court explained that Rule 3:13-3(b)(2)(D)[4] applies to written statements or memoranda when the defense intends to use such evidence at trial; however, when counsel decides not to use the evidence, Rule 3:13-3(d)'s work product protection applies.[5] Id. at 478-79. The Court noted that "[i]t is abhorrent to our concept of criminal justice to compel a defendant, under the guise of reciprocal

---

[4] When this Court decided Williams, the relevant rules were numbered as Rule 3:13-3(b)(1) to (4). That numbering coincides with what is now Rule 3:13-3(b)(2)(A) to (D).

[5] The work product rule was previously Rule 3:13(c); it is now Rule 3:13(d).

20

discovery, to disclose to the State inculpatory evidence uncovered by defense counsel during his preparation for trial and then allow the State to use that evidence as part of its case in chief." Id. at 479.  Finding that the Sixth Amendment bars such methods, the Court reasoned that its holding would avoid a chilling effect and ensure that defense counsel could exercise discretion in preparing a proper defense for a client.  Id. at 478-79.

IV.

Applying those principles, we hold that the affidavits in this case are discoverable pursuant to our discovery rules and that neither the Sixth nor the Fifth Amendment shield their production.

Defendant relies on this Court's prior caselaw regarding reciprocal discovery to support his argument that the affidavits, if they exist and are in defense counsel's possession, should not be turned over to the State.  The holdings in Mingo and Williams, however, do not control in this factually distinct and unique case.  In Mingo, the State sought to obtain an inculpatory expert report that defendant did not intend to use at trial.  77 N.J. at 580.  In Williams, the State sought to compel production of memoranda of a victim interview the defense conducted and pictures that were shown to the victim.  80 N.J. at 477.  In both cases, the State tried to access materials and

21

information created by defense counsel or at defense counsel's direction in preparation for trial. That is simply not the case here.

In this matter, neither party disputes that defense counsel played no role whatsoever in the genesis of Zay's affidavit. The affidavit's creation was allegedly the result of a kidnapping and witness intimidation plot for which defendant and two other individuals have been criminally charged. The affidavit, therefore, is physical evidence of a crime. It is not the product of the defense investigation or attorney work product, and it therefore does not fall within the exception to the discovery obligations set forth in Rule 3:13-3(d). Rather, the affidavit is a relevant writing potentially in defense counsel's possession pursuant to Rule 3:13-3(b)(2)(B). There is no question that this type of physical evidence falls squarely within defendant's required reciprocal discovery obligations under that Rule.

The affidavit would also fall under Rule 3:13-3(b)(2)(D) as a written statement by a witness that the State intends to call at trial. Zay, as a witness to the murder and a victim of kidnapping and witness tampering, may be called by the State to testify at defendant's trial. As such, this written affidavit that Zay was allegedly forced to transcribe, is a written statement "made by a witness whom the State may call as a witness at trial." See R. 3:13-3(b)(2)(D).

22

Compelling defense counsel to turn over in discovery an item in his possession that is physical evidence of a crime does not trigger the same Sixth Amendment concerns found in previous cases. This Court's utmost concern in Williams and Mingo was that requiring the defense to produce potentially inculpatory material uncovered during the defense investigation that the defense did not intend to use at trial would have a chilling effect on defense counsel's ability to conduct thorough and in-depth pretrial investigations for fear that any such material would have to be turned over to the State. No such concern is present in this case, however, in which the item in question is physical evidence of a crime and not the product of defense counsel's investigation. The State's certification in support of its motion to compel discovery sufficiently presented facts regarding the alleged kidnapping and creation of Zay's affidavit to establish that this affidavit is physical evidence of a crime.[6]

Defendant's argument that compelling the discovery of this affidavit violates his Fifth Amendment right against self-incrimination is similarly unavailing. The State certified that it believes the affidavit is in defense

---

[6] As previously noted, the State also believes that DJ Neptune may have been forced to draft a similar recantation affidavit. At oral argument on the motion to compel, the State represented on the record that it had not been able to reach DJ Neptune, "despite feverish and repeated attempts to do so."

23

counsel's possession after having been turned over to counsel by defendant's alleged co-conspirators. The discovery request, therefore, is directed to counsel, not defendant, and it pertains to materials allegedly provided by others. Again, the Fifth Amendment right against self-incrimination cannot be asserted by or on behalf of third parties because the Fifth Amendment right is personal to defendant. See Baum, 199 N.J. at 417. As defendant is not being compelled to do anything, the Fifth Amendment is inapplicable here.

The unique facts of this case lead this Court to the conclusion that the affidavits, as physical evidence of a crime, fall within our discovery rules, either Rule 3:13-3(b)(2)(B) or Rule 3:13-3(b)(2)(D), and that no constitutional privilege stands in the way of their production.

If counsel is in possession of the affidavits and turns them over, the State must take precautions in introducing the affidavits at trial to avoid identifying defense counsel as the source of the documents so as not to prejudice defendant before the jury. The State can appropriately lay a foundation for the admission of the documents at trial by sanitizing the manner in which the State came into possession of the documents without stating that the affidavits came from defense counsel.

## V.

For the foregoing reasons, we affirm the Appellate Division's judgment and remand this matter consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE PIERRE-LOUIS's opinion.

25